Robert C. BARTON, Windoor World, Inc., and Deriso Development, LLC, Appellants,

v.

FASHION GLASS AND MIRROR, LTD., Appellee.

No. 14–09–00071–CV.

Court of Appeals of Texas, Houston (14th Dist.).

July 20, 2010.

Rehearing Overruled Oct. 21, 2010.

Ralph C. Perry–Miller, Brent E. Dyer, Dallas, for appellants.

Frederick Bostwick III, Ryan C. Johnson, Mark C. Hobbs, Waco, for appellee.

Panel consists of Justices YATES, SEYMORE, and BROWN.

## OPINION

LESLIE B. YATES, Justice.

Appellants Robert C. Barton, Windoor World, Inc., and DeRiso Development, LLC appeal from the trial court's order confirming an arbitration award in favor of appellee Fashion Glass and Mirror, Ltd. ("FGM") and severing the arbitration award from the remaining claims. Appellants assert that the trial court erred in confirming the award against Barton and DeRiso, that the arbitrator exceeded the scope of his authority in making the award, and that the trial court improperly severed the arbitration award from the rest of the claims in the lawsuit. We affirm.

## BACKGROUND

FGM and Windoor entered into an agreement for FGM to purchase the assets of Windoor from Barton. According to FGM's brief, DeRiso is another entity owned by Barton and is a third-party beneficiary under the contract.[1] During the negotiations, Barton represented that Windoor's net worth was about $590,000. Paragraph 2(d) of the purchase agreement provided for a post-closing accounting to occur within 120 days of closing that could adjust the ultimate purchase price based on whether the accounting showed a certain greater or lesser net worth than represented. FGM conducted this account-

---

1. The record does not provide any additional information about DeRiso and its relationship to Barton and/or Windoor.

ing, which showed that Windoor's net worth was only $100,647.64—substantially less than had been represented. FGM sent a demand letter to Barton and Windoor for $343,972.25. Windoor and Barton refused to pay, based on objections they had to FGM's accounting.

FGM sued Windoor, Barton, and DeRiso for fraud and breach of contract. FGM, Windoor, Barton, and DeRiso entered into a rule 11 agreement. In one section of the agreement, the parties agreed to a limited arbitration before a Certified Public Accountant. The agreement states: "The Parties agree to submit their dispute regarding the paragraph 2(d) calculation dispute to the Arbitrator and that any ruling by the Arbitrator shall be final and binding upon all the parties." In a separate section of the rule 11 agreement, the parties agreed that if a certain property was sold or transferred, a portion of the proceeds would be placed in escrow to be used for paying any amounts the arbitrator found "to be owed to FGM by Defendants Barton, Deriso [sic] and/or Windoor, or owed to Defendants Barton, Deriso [sic] and/or Windoor by FGM."

The parties went to arbitration, and the arbitrator issued an award in favor of FGM. The arbitrator found that Windoor's net worth was even less than FGM's original figures showed and therefore determined that FGM was owed $475,964 rather than the $343,972.25 that FGM had originally demanded. FGM filed a motion to confirm the arbitration award and sever it from the remainder of the case, which the trial court granted. Windoor, Barton, and DeRiso now appeal.

## ANALYSIS

### A. Legal Standard for Reviewing Arbitration Awards

Texas law strongly favors arbitration of disputes. *See Prudential Sec. Inc. v. Marshall,* 909 S.W.2d 896, 898 (Tex.

1995); *Baker Hughes OilField Operations, Inc. v. Hennig Prod. Co.,* 164 S.W.3d 438, 442 (Tex.App.-Houston [14th Dist.] 2005, no pet.). Judicial review of an arbitration award is very limited. *See City of Pasadena v. Smith,* 292 S.W.3d 14, 20 (Tex. 2009). Absent proof of certain statutory or common law exceptions, a trial court cannot vacate or modify an arbitration award. *See Baker Hughes,* 164 S.W.3d at 442. An arbitration award is entitled to the force and respect of a judgment, and every reasonable presumption must be indulged in favor of the award. *See CVN Group, Inc. v. Delgado,* 95 S.W.3d 234, 238 (Tex.2002); *Baker Hughes,* 164 S.W.3d at 442.

### B. Award Against Barton and DeRiso

In their first issue, appellants argue that the trial court erred in confirming the arbitration award as to Barton and DeRiso. They insist that only Windoor agreed with FGM to arbitrate the paragraph 2(d) dispute, and they deny that the arbitration award as written covers Barton and DeRiso. Therefore, they contend that the trial court erred in confirming an arbitration award against Barton and DeRiso when they did not agree to be bound by arbitration and when the arbitration award did not purport to include them. We disagree with both of these arguments.

A rule 11 agreement is a contract subject to the usual rules of contract interpretation. *Trudy's Tex. Star, Inc. v. City of Austin,* 307 S.W.3d 894, 914 (Tex.App.-Austin 2010, no pet. h.). We interpret a contract in accordance with the intent of the parties as expressed in the plain wording of the contract. *See Dynegy Midstream Servs., Ltd. P'ship v. Apache Corp.,* 294 S.W.3d 164, 168 (Tex.2009); *Frost Nat'l Bank v. L & F Distribs., Ltd.,* 165 S.W.3d 310, 311–12 (Tex.2005). The first paragraph of the rule 11 agreement states

that it is being entered into by FGM and Barton, Windoor, and DeRiso, which are collectively referred to as the "Parties." The arbitration section of the agreement states: "The Parties agree to submit their dispute regarding the paragraph 2(d) calculation dispute to the Arbitrator and that any ruling by the Arbitrator shall be final and binding upon all the Parties." This language plainly states that all of the parties to the agreement, which include Barton and DeRiso, agree to arbitration and to be bound by the arbitration results. This interpretation is supported by language in the agreement regarding costs, which provides that the arbitration costs "shall be borne equally, one half by Plaintiff and one half by Defendants." (emphasis added). Furthermore, DeRiso and Barton specifically agreed to place a portion of proceeds from the sale of certain property into an escrow fund for the express purpose of paying "any and all amounts determined by the Arbitrator to be owed to FGM by Defendants Barton, Deriso [sic], and/or Windoor." The agreement plainly states that all three appellants were agreeing to submit to and be bound by arbitration, to pay one half of all arbitration costs, and to set aside money in escrow to cover at least a portion of a potential arbitration award to FGM against any or all of them.

■ We also reject appellants' argument that the arbitration award did not purport to include Barton and DeRiso. In his award, as well as in a pre-award letter to the parties, the arbitrator consistently used the word "Defendant." From this, appellants argue that the arbitrator was referring only to Windoor and not all three appellants. This is too narrow a view in the circumstances. The arbitrator was working from the arbitration agreement, which explicitly states that all three appellants agreed to be bound by arbitration and had taken steps to fund any award against them. Further, all three appellants participated in the arbitration process. We do not have a complete record of the arbitration showing Barton and DeRiso's precise level of participation in the arbitration,[2] but the record contains one letter to the arbitrator from all three appellants explaining "Defendants' position" regarding "the resolution of the disputes relating to" FGM's post-closing accounting. And all three appellants paid the arbitration fee. Moreover, the arbitrator took no action showing an intent to treat Windoor separately from the other appellants. Thus, when viewed in context of the language in the arbitration agreement, the information submitted by the parties, and the parties' conduct in the arbitration, the arbitrator's award is more reasonably read as including all three appellants. *See Babcock & Wilcox Co. v. PMAC, Ltd.,* 863 S.W.2d 225, 235 (Tex.App.-Houston [14th Dist.] 1993, writ denied) ("If the award is rationally inferable from the facts before the arbitrator, we must affirm the award."); *Riha v. Smulcer,* 843 S.W.2d 289, 293–94 (Tex.App.-Houston [14th Dist.] 1992, writ denied) (interpreting reasonableness of arbitration award in light of arbitration proceedings and information before arbitrator); *see also CVN Group,* 95 S.W.3d at 238 ("All reasonable presumptions are indulged in favor of the award, and none against it.").

■ Appellants insist that the trial court had no power to confirm the arbitration award against all three appellants because the underlying contract dispute was between only FGM and Windoor and therefore no pleading supported that liabil-

**2.** Without a complete record of the arbitration proceedings, we presume adequate support for the arbitration award. *See Anzilotti*

*v. Gene D. Liggin, Inc.,* 899 S.W.2d 264, 267 (Tex.App.-Houston [14th Dist.] 1995, no writ).

ity as to Barton and DeRiso. Appellants have no authority supporting this proposition. The authority they cite involves a trial court entering a final judgment in a case with no arbitration, which must be based on the live pleadings at the time of judgment. *See, e.g., Herrington v. Sandcastle Condominium Ass'n,* 222 S.W.3d 99, 102 (Tex.App.-Houston [14th Dist.] 2006, no pet.). However, the arbitrator's authority is derived from the arbitration agreement, not the court pleadings, and the arbitrator can grant relief that a trial court can not. *See* Tex. Civ. Prac. & Rem. Code Ann. § 171.090 (Vernon 2005) ("The fact that the relief granted by the arbitrators could not or would not be granted by a court of law or equity is not a ground for vacating or refusing to confirm the award."); *City of Pasadena,* 292 S.W.3d at 20 ("An arbitrator derives his power from the parties' agreement to submit to arbitration."); *see also Baker Hughes,* 164 S.W.3d at 444 (stating that arbitration pleadings are to be construed liberally).

We conclude that all appellants agreed to be bound by arbitration and that the arbitration award covered all appellants. Therefore, the trial court did not err in confirming the arbitration award against Barton and DeRiso, and we overrule appellants' first issue.

### C. Scope of Authority

▬▬ In their second issue, appellants argue that the trial court should have vacated the arbitration award on the grounds that the arbitrator exceeded the scope of his authority. *See* Tex. Civ. Prac. & Rem. Code Ann. § 171.088(a)(3)(A) (Vernon 2005). The scope of an arbitration agreement is a question of law that we review de novo. *See McReynolds v. Elston,* 222 S.W.3d 731, 740 (Tex.App.-Houston [14th

Dist.] 2007, no pet.). We broadly construe arbitration agreements, and the burden is on the party challenging the award to prove the arbitrator acted outside his authority. *See id.; Baker Hughes,* 164 S.W.3d at 444. There is a presumption that the arbitrator's actions were within his authority, and we resolve all doubts in favor of the award. *See McReynolds,* 222 S.W.3d at 740; *Peacock v. Wave Tec Pools, Inc.,* 107 S.W.3d 631, 635–36 (Tex.App.-Waco 2003, no pet.); *see also Prudential,* 909 S.W.2d at 899 (noting "the strong presumption in favor of arbitration").

▬▬ Appellants contend that the arbitrator exceeded the scope of his authority by concluding that they owed FGM an amount that was more than FGM's pre-arbitration demand. They contend that the dispute submitted to arbitration was narrowly limited to whether FGM's demand was correct or should be lowered in response to appellants' objections. We disagree with appellants' interpretation of the arbitration agreement. Though the agreement was narrow in the sense that it gave the arbitrator authority to resolve only the paragraph 2(d) dispute, it gave the arbitrator full authority to resolve that issue.[3] The parties could have agreed to limit the arbitrator's authority to enter an award above or below a certain amount, but they did not. Instead, they agreed "to submit their dispute regarding the paragraph 2(d) calculation dispute to the Arbitrator." Appellants complain that the arbitrator exceeded his authority by requesting supplemental information from the parties and conducting a "de novo accounting." The power to request supplemental information was

---

**3.** This is unlike the situation in *Peacock v. Wave Tec Pools, Inc.,* 107 S.W.3d 631 (Tex. App.-Waco 2003, no pet.), the authority on which appellants heavily rely, because the arbitration agreement there specified explicit remedies and stated that the arbitrator could not exceed those remedies. *Id.* at 635.

well within the arbitrator's authority. The parties agreed to arbitration before a CPA so he could use his expertise to resolve their accounting dispute, and this gave him implied authority to obtain the information from the parties necessary to do so. *See City of Pasadena,* 292 S.W.3d at 20 n. 41 (noting that arbitrator's authority is derived from the matters submitted in the arbitration agreement " 'either expressly or by necessary implication' " (quoting *Gulf Oil Corp. v. Guidry,* 160 Tex. 139, 327 S.W.2d 406, 408 (1959))); *accord Baker Hughes,* 164 S.W.3d at 443. Further, the limited information we have from the arbitration indicates that the arbitrator did not in fact conduct a totally new accounting but rather worked with FGM's calculations and appellants' objections, both of which were adjusted in the course of the arbitration's adversarial and discovery process.

The arbitrator resolved the parties' dispute. That he did so in an unexpected manner does not mean the arbitrator acted outside the scope of his authority. *See Babcock,* 863 S.W.2d at 235 ("When parties agree to arbitration, they agree to accept whatever reasonable uncertainties might arise from the process."). The trial court did not err in refusing to vacate the arbitration award on the basis that the arbitrator exceeded the scope of his authority. We overrule appellants' second issue.

**D. Severance**

▮▮▮▮ In their third issue, appellants argue that the trial court erred in severing the arbitration award from the remainder of the suit. Texas Rule of Civil Procedure 41 provides that any claim against a party can be severed and proceeded with separately. A claim is properly severable if (1) the controversy involves more than one cause of action, (2) the claim to be severed is an independent claim, and (3) the claim to be severed is not so interwoven with the remaining claims that they involve the same facts and issues. *See Guar. Fed. Sav. Bank v. Horseshoe Operating Co.,* 793 S.W.2d 652, 658 (Tex.1990); *In re Gen. Agents Ins. Co. of Am.,* 254 S.W.3d 670, 673 (Tex.App.-Houston [14th Dist.] 2008, orig. proceeding [mand. denied] ). We review a trial court's severance determination for an abuse of discretion. *Guar. Fed. Sav. Bank,* 793 S.W.2d at 658; *In re Gen. Agents,* 254 S.W.3d at 673.

▮▮▮▮ Appellants contend that the arbitration award is not severable because it is not independent from the remaining claims in the lawsuit. They assert that the arbitrated claim is not independent because it arises out of the same transaction as the fraud claim and therefore would be a compulsory counterclaim. However, that is not the test in the severance context.[4] For a claim to be independent in the severance context, the claim need only be capable of having been asserted as a claim in a separate lawsuit. *See Guar. Fed. Sav. Bank,* 793 S.W.2d at 658; *Collins v. Tex Mall, L.P.,* 297 S.W.3d 409, 418–19 (Tex.App.-Fort Worth 2009, no pet.); *In re Gen. Agents,* 254 S.W.3d at 673. The arbitrated claim is based on FGM's breach of contract claim against Windoor, which certainly could stand alone as an independent lawsuit.

▮▮▮ Appellants further assert that the arbitration award is not severable because it is too interwoven with the remaining fraud claim. We disagree. The arbitrator was asked to decide a narrow financial issue, which was the propriety of the postclosing accounting under paragraph 2(d) of the contract. The fraud claim will require

---

4. The only authority appellants cite in support of their theory is a case involving a compulsory counterclaim, not severance. *See S. Plains Switching Ltd. v. BNSF Ry.,* 255 S.W.3d 690, 700 (Tex.App.-Amarillo 2008, pet. denied).

proof of misrepresentations, intent, reliance, and a basis for punitive damages, none of which were at issue in the arbitration. Thus, the overlap between the narrow issue arbitrated and the proof necessary at trial on the fraud claim is not significant. Appellants emphasize that the damages are intertwined because FGM cannot recover for both contract and fraud damages based on the same transaction. Even if the damages FGM recovered in the arbitration award impact the damages recoverable in the fraud claim, that is not a basis for denying severance because the trial judge can take the arbitration award into account in entering judgment on the fraud claim. We conclude that the arbitration award is not so interwoven with the fraud claim as to prevent severance. *See In re Gen. Agents,* 254 S.W.3d at 674–75 (finding that declaratory judgment claim involving validity of agreement not so intertwined as to prevent severance from claims involving misrepresentations and contract negotiations); *Crossmark, Inc. v. Hazar,* 124 S.W.3d 422, 433 & n. 11 (Tex. App.-Dallas 2004, pet. denied) (finding no abuse of discretion in severing arbitrated claim from remainder of suit because of separate issues to be resolved in non-severed claims).

The trial court did not abuse its discretion in severing the arbitration award from the remaining claims in the suit. We overrule appellants' third issue.

### CONCLUSION

Having overruled appellants' three issues, we affirm the trial court's order confirming and severing the arbitration award.