**Affirmed and Memorandum Opinion filed April 28, 2022.**



In The

# Fourteenth Court of Appeals

## NO. 14-21-00074-CV

## ASTON SOLAR, LLC AND ASTON HOLDINGS, INC., Appellants

### V.

## SUNNOVA ENERGY CORPORATION, Appellee

**On Appeal from the 125th District Court
Harris County, Texas
Trial Court Cause No. 2020-52979**

## M E M O R A N D U M   O P I N I O N

Aston Solar, LLC and Aston Holdings, Inc., appeal the trial court's order confirming an arbitration award and denying their motion to vacate the award. In the arbitration, each side sought damages under a contract. The arbitrator found in favor of appellee Sunnova Energy Corporation, which then sought to confirm the arbitrator's award. In the trial court, Sunnova named Aston Solar and Aston Holdings as defendants although the arbitrator's award is claimed to cover only Aston Solar. The trial court confirmed the award against both appellants.

Appellants argue that the arbitrator exceeded her authority by awarding consequential damages despite a consequential damage exclusion in the contract. Separately, assuming that the arbitrator did not exceed her authority, appellants say the court erred in confirming the award against Aston Holdings because Aston Holdings neither consented to nor participated in the arbitration.

We hold that the arbitrator decided all issues within her authority, which included the authority to determine damages questions, and thus did not exceed her powers. We also hold that the trial court did not err in confirming the award against Aston Holdings. We affirm the trial court's judgment.

## Background

We present the facts as found by the arbitrator. Sunnova, a solar leasing and financing company, provides financing to companies—called "channel partners"—that design and build solar systems. Aston Solar is a solar design, installation, and service company that markets solar systems, designs the systems for each customer, obtains permits, and installs and services the solar panels. In 2014, Aston Solar became one of Sunnova's channel partners, and the parties signed a Channel Partner Agreement ("CPA"), which contained an arbitration clause.

Under the CPA, once Aston Solar installed systems on customers' properties, ownership transferred to Sunnova but Aston Solar remained responsible to perform warranty repair work. The customers leased the systems from Sunnova.

Sunnova began receiving customer complaints on some systems installed by Aston Solar. Sunnova contacted Aston Solar to conduct repairs. Aston Solar made repairs on some of the systems but refused to provide any further repairs or service until Sunnova paid Aston Solar. Sunnova ultimately repaired some of the systems at its own expense; other systems were considered total losses. Sunnova did not

2

receive any further lease payments from the affected customers due to the customers' frustration.

Aston Solar demanded arbitration under the CPA. According to Aston Solar, it completed some of the requisite repair work but Sunnova refused to pay Aston Solar for that work. Aston Solar sought $179,170.16 in damages. Aston Solar also claimed that Sunnova failed to follow the CPA's requirements to notify Aston Solar of the customer complaints and to allow Aston Solar to cure the deficiencies.

Sunnova filed counterclaims, alleging that it was entitled to withhold payment under the CPA as an offset against damages incurred because of Aston Solar's inferior work. Sunnova contended that Aston Solar breached the CPA by failing to properly design and install the systems, failing to honor warranty obligations, and failing to indemnify Sunnova. Sunnova agreed that Aston Solar should be credited certain offsets for the work it performed but alleged that Aston owed, after applying the offsets, $574,282 in damages, plus interest and attorney's fees.

The arbitrator held a two-day hearing, receiving witness testimony and exhibits. After considering the evidence and the parties' arguments, the arbitrator found that Aston Solar's claims failed but that Sunnova was entitled to relief on its counterclaims. The arbitrator signed a final award, finding that Sunnova was entitled to $574,282 in damages, as well as attorney's fees, arbitration fees and expenses, and interest.

Sunnova then moved to confirm the award in district court. As defendants, Sunnova named both Aston Solar and Aston Holdings.[1] Appellants responded and

---

[1] According to appellants, Aston Holdings is the sole member of Aston Solar.

moved to vacate the final award because the arbitrator exceeded her powers by awarding damages not permitted by the CPA. Appellants also argued that Aston Holdings was not a proper party to the action, as it was not a party to the CPA and was not subject to the final award.

The trial court granted Sunnova's motion in its entirety, confirmed the arbitrator's final award, denied appellants' motion to vacate, and signed a judgment in favor of Sunnova in accordance with the final award.

Aston Solar and Aston Holdings appeal.

## Standard of Review

The parties agree that the Texas Arbitration Act governs this case. *See* Tex. Civ. Prac. & Rem. Code §§ 171.001-.098. "Unless grounds are offered for vacating, modifying, or correcting an award under Section 171.088 or 171.091, the court, on application of a party, shall confirm the award." *Id.* § 171.087. We review de novo a trial court's order confirming or vacating an arbitration award; however, our review of the underlying award is extremely deferential. *See CVN Grp., Inc. v. Delgado*, 95 S.W.3d 234, 238 (Tex. 2002); *Matter of Marriage of Piske*, 578 S.W.3d 624, 629 (Tex. App.—Houston [14th Dist.] 2019, no pet.). Judicial review of the arbitration process is limited, and even a mistake of law or fact by the arbitrator in applying substantive law is not a proper ground for vacating an award. *See Cambridge Legacy Grp., Inc. v. Jain*, 407 S.W.3d 443, 447 (Tex. App.—Dallas 2013, pet. denied). We indulge all reasonable presumptions in favor of the award and none against it. *See Delgado*, 95 S.W.3d at 238.

## Analysis

Appellants present two issues for review. First, they argue that the trial court should have vacated the award in its entirety because the arbitrator exceeded

her authority. Second, they argue that, at the least, the trial court erred in confirming the award as to Aston Holdings, which they claim was a non-party to the CPA and the arbitration proceeding.

## A.   The arbitrator did not exceed her authority.

Appellants' argument for vacating the award centers on the contention that the arbitrator exceeded her authority. *See* Tex. Civ. Prac. & Rem. Code § 171.088(a)(3)(A) (on application of a party, the court shall vacate an arbitration award if, among other specifically enumerated reasons, the arbitrator exceeded her powers).

Texas law strongly favors arbitration of disputes. *Prudential Secs., Inc. v. Marshall*, 909 S.W.2d 896, 898 (Tex. 1995). An arbitrator's powers are derived from the parties' agreement to submit to arbitration. *Nafta Traders, Inc. v. Quinn*, 339 S.W.3d 84, 90 (Tex. 2011). Therefore, we look to the arbitration agreement to determine whether the arbitrator had authority to decide the issue. *See id.*; *D.R. Horton-Tex., Ltd. v. Bernhard*, 423 S.W.3d 532, 534 (Tex. App.—Houston [14th Dist.] 2014, pet. denied).

An arbitrator exceeds her authority when she disregards the contract and dispenses her own idea of justice. *Bernhard*, 423 S.W.3d at 534. However, an arbitrator does not exceed her authority merely because she may have misinterpreted the contract or misapplied the law. *Id.* "[A]n arbitrator does not exceed her authority by committing a mistake of law, but instead by deciding a matter not properly before her." *Id.* (internal quotation omitted). The proper inquiry is not whether the arbitrator correctly decided an issue, but whether the arbitrator had authority to decide the issue at all. *Id.*; *Forest Oil Corp. v. El Rucio Land & Cattle Co.*, 518 S.W.3d 422, 431 (Tex. 2017). An arbitrator does not exceed her authority when the matter she addresses is one that the parties agreed to

5

arbitrate. *Centex/Vestal v. Friendship W. Baptist Church*, 314 S.W.3d 677, 686 (Tex. App.—Dallas 2010, pet. denied). We resolve any doubts regarding the scope of what is arbitrable in favor of arbitration. *Id.* at 684.

Appellants argue that the "types of damages" awarded by the arbitrator were specifically excluded by the CPA. Therefore, they contend that, in granting such a remedy, the arbitrator acted outside the scope of her authority and the trial court should have vacated the award. We disagree.

The CPA permitted the arbitrator to determine the availability and amount of damages. The arbitration clause, Section 18.1, stated, "Any dispute, controversy, difference or claim arising out of or in connection with this agreement, or the breach, termination or validity of this agreement . . . shall be submitted to final and binding arbitration . . . . " (Capitalization normalized.) No provision in the CPA specifically excluded a determination of damages from the arbitrator's authority. Thus, any dispute arising out of the CPA—including any dispute regarding damages—was within the arbitrator's broad authority. *E.g.*, *Baker Hughes Oilfield Operations, Inc. v. Hennig Prod. Co.*, 164 S.W.3d 438, 443 (Tex. App.—Houston [14th Dist.] 2005, no pet.) (provision that parties would arbitrate "'any controversy or claim arising out of or relating to the Agreement or to [Baker Hughes'] services, equipment, or products provided to Customer'" was, "by its plain language, a broad arbitration provision and subsume[d] *any* controversy or claim arising out of or relating to Baker Hughes' services").

Appellants do not dispute that the CPA vested the arbitrator with authority to award damages; in fact, appellants themselves sought damages as a remedy for their own claims in arbitration. Appellants argue instead that the arbitrator could not award the specific damages sought by Sunnova. The arbitrator's award does not specify the nature of the damages sought by and awarded to Sunnova. In post-

hearing, pre-award briefing, Sunnova asserted that several customers' systems were "total losses" and others were "salvaged" after Sunnova made repairs. Sunnova characterized its damages as "the money paid to Aston to design, install, and repair" the "total loss" systems, as well as "Sunnova's direct costs in labor and repair materials." In its briefing, Aston Solar contended that "Sunnova's claim for damages amounting to the entire cost of certain systems" was not recoverable under the terms of the CPA.

Appellants' argument is two-fold. First, according to appellants, Sunnova's sole and exclusive remedy for any complaints about Aston Solar's installation work was provided in Section 9.2 of the CPA. This section, titled "Limited Remedy and Procedures," provides, in relevant part:

> During the warranty period, . . . as the sole and exclusive remedy, Contractor shall repair or replace, at its sole option, cost and expense, all work . . . covered by a warranty under Section 9.1 ("Warranty Services") within a reasonable period of time after receipt of written notice . . . . If Contractor does not make such repair or replacement within ten (10) days of receipt of notice from Sunnova, Contractor shall be deemed to be in breach of this agreement; provided that so long as such cure cannot be achieved in such period and Contractor is diligently pursuing such cure by appropriate action, Contractor shall not be deemed in default. In such event, Sunnova may, upon written notice to contractor and without prejudice to any other rights Sunnova may have under applicable law, make such repair or replacement and (I) charge the costs and expenses of such repair or replacement to Contractor, who shall pay such amounts, or (II) offset such amounts against any payments otherwise due under this agreement by Sunnova to Contractor for work related to any solar system. (Capitalization normalized.)

Second, appellants argue that the CPA specifically precluded consequential damages. For this part of their argument, appellants rely on Section 17.1, titled "Consequential Damages," which provides:

7

Notwithstanding any other provision of this agreement, no party shall be liable to the other for, nor shall a court or arbitrator assess, any indirect, incidental, or consequential losses or damages, including losses of use, profits, business opportunity, reputation or financing, or any punitive damages, special damages, mental anguish damages, or pain and suffering damages, whether arising in contract, warranty, tort (including negligence), strict liability or otherwise, subject to the following exclusions: (I) liquidated damages payable according to Article 8; (II) damages arising out of a breach of Article 12 by either party; or (III) claims made by, damages incurred by, or amounts payable to third parties for physical damage to or physical destruction of property, or death or bodily injury under an indemnity given under this agreement, or to the extent a party is insured against such risk(s) under policies of insurance. (Capitalization normalized.)

Reading these two provisions together, appellants contend that Sunnova failed to comply with the notice requirement in Section 9.2, but that, even if it had complied, Sunnova's sole and exclusive remedy for any deficient work was to make the repairs itself and either charge Aston Solar or offset the repair cost against any payments due. And, appellants continue, in no event could Sunnova recover for its consequential damages caused by Aston Solar's performance, per Section 17.1.

Essentially, appellants' argument is that the arbitrator misinterpreted Sections 9.2 and 17.1 of the CPA. This is an issue of contract interpretation, which was for the arbitrator, not the trial court or this court, to decide. *See Petrobras Am., Inc. v. Astra Oil Trading NV*, No. 01-11-00073-CV, 2012 WL 1068311, at *17 (Tex. App.—Houston [1st Dist.] Mar. 29, 2012, no pet.) (mem. op.) ("In actuality, what Petrobras is asking this Court to do is exactly what we cannot: second-guess the Panel's decision on the merits of contract interpretation."). Whether Sunnova could recover its claimed damages under the CPA was placed squarely before the arbitrator and decided during the arbitration. The arbitrator stated in the award, "Aston responds that Sunnova is simply charging back its

8

losses from non-paying customers which is not allowed under the Agreement." The arbitrator disagreed with appellants and awarded Sunnova damages.

We will not disturb the arbitrator's decision, and we find support from other courts that have addressed comparable challenges. In *Forest Oil*, the contract at issue provided for arbitration and gave the arbitrators "'the authority to award punitive damages where allowed by Texas substantive law.'" *Forest Oil*, 518 S.W.3d at 432 (quoting the arbitration agreement). The losing party argued that the panel's award of damages exceeded Texas law, and therefore the arbitrators exceeded their authority. *Id.* at 431. But, as the supreme court noted, the contract also provided that all "'disputes relating to this Agreement or disputes over the scope of this arbitration clause[] will be resolved by arbitration.'" *Id.* at 432 (quoting the agreement). Under this provision, determining what damages Texas law allows was as much within the arbitrators' broad authority as determining the amount to be awarded. *Id.*

The San Antonio Court of Appeals resolved a similar issue. *See DiAthegen, LLC v. Phyton Biotech, Inc.*, No. 04-14-00267-CV, 2015 WL 5037645 (Tex. App.—San Antonio Aug. 26, 2015, pet. denied) (mem. op.). There, the contract provided that in the event of an uncured breach by one party, the other party was entitled to terminate the agreement and "'to recover all losses, costs, expenses and damages incurred or suffered by it.'" *Id.* at *1 (quoting the contract). However, the agreement also provided that "'in no event will a party be liable to another party for any consequential, incidental or special damages, including lost profits and revenues.'" *Id.* (quoting the contract). The contract required all disputes, with one immaterial exception, be resolved through binding arbitration. *Id.* Following arbitration, the losing party sought vacatur, arguing that the panel exceeded its authority by awarding consequential damages not recoverable under the contract.

*Id.* at \*3.  The appellate court held that the record did not support the assertion that the panel had disregarded the contractual limitations on its authority.  Rather, the panel expressly acknowledged the contract limitation on damages and that it was bound by it.  *Id.* at \*5.  At worst, the panel made an error of law classifying the damages as either direct or consequential, but "'convincing a court of an arbitrator's error—even his grave error—is not enough.'"  *Id.* (quoting *Oxford Health Plans LLC v. Sutter*, 569 U.S. 564, 572 (2013)).

*DiAthegen* is directly on point.  As in that case, the present record does not support appellants' contention that the arbitrator disregarded the CPA's prohibition against consequential damages.  At worst, the arbitrator made an error of law classifying the damages Sunnova sought as either direct or consequential.  But the arbitrator's interpretation of the CPA, and the classification of damages recoverable under the contract, was squarely within the arbitrator's authority.  *See Forest Oil*, 518 S.W.3d at 432.  Even if the arbitrator erred, that is not enough to establish that she exceeded her powers to justify vacatur.  *See id.* at 431; *Bernhard*, 423 S.W.3d at 534; *see also DiAthegen*, 2015 WL 5037645, at \*5.

We overrule appellants' first issue.

**B.    Aston Holdings is a proper party to the award.**

In appellants' second issue, they complain that the trial court's order confirming the arbitration award erroneously named Aston Holdings as a defendant.  Appellants contend that Aston Holdings was not a party to the CPA, did not participate in the arbitration, and was not named in the final award.  Accordingly, appellants continue, the trial court erred in confirming the award against Aston Holdings.

We begin with whether Aston Holdings was a signatory to the arbitration agreement. In 2014, Sunnova and Aston Solar signed the CPA, in which Aston Solar was designated "Contractor." The CPA included an arbitration agreement:

> The award of the arbitral tribunal (the "arbitration award"): (I) shall be conclusive, final and binding upon the parties; and (II) shall be the sole and exclusive remedy between the parties regarding any and all claims and counterclaims presented to the arbitral tribunal. The arbitration award shall be final and binding upon the parties, and judgment on the arbitration award may be entered in any appropriate court sitting or located in the state of Texas or in any other court as necessary to pursue judgment. (Capitalization normalized.)

The CPA specifically defined "party" and "parties" as "hav[ing] the meanings set forth in the Preamble." The Preamble provided that "Sunnova and Contractor are each referred to in this Agreement as a 'Party' and collectively as the 'Parties.'"

In 2016, Sunnova and Aston Holdings signed an amendment to the CPA, in which Aston Holdings was designated "Contractor." In the amendment, Sunnova and Aston Holdings agreed that, "except to the extent amended in [the 2016 amendment], the terms and conditions of the CPA remain in full force and effect."

Construing these two documents together, we conclude that Aston Holdings was a party and signatory to the CPA, as amended. *E.g.*, *Santander Consumer USA, Inc. v. Mata*, No. 03-14-00782-CV, 2017 WL 1208767, at \*2-3 (Tex. App.—Austin Mar. 29, 2017, no pet.) (mem. op.) (under the doctrine of incorporation by reference, one agreement may properly constitute part of another agreement if one agreement references the other). Accordingly, Aston Holdings agreed to be bound by the CPA's arbitration agreement.

Aston Holdings also participated in the arbitration. Both Aston Solar and Aston Holdings demanded arbitration. According to that pleading, Aston Holdings

11

acquired Aston Solar in January 2011. The pleading also referenced the amendment to the CPA executed by Aston Holdings and represented that Aston Holdings had "invoiced Sunnova based on the contractual relationship created by the CPA." In the arbitration demand, both Aston Solar and Aston Holdings sought damages from Sunnova. Collectively, Aston Solar and Aston Holdings sent requests for production to Sunnova. In that discovery request, Aston Solar and Aston Holdings defined "claimants" to mean both Aston Solar and Aston Holdings. Appellants also sent Sunnova interrogatories and responded to Sunnova's discovery requests. In appellants' discovery response, they designated Thomas Chen as a witness in the upcoming arbitration hearing; Chen was to provide testimony regarding both Aston Solar and Aston Holdings and those companies' business relationship with Sunnova:

> Thomas Chen will provide testimony as to the usual and customary business practices of ASTON SOLAR AND ASTON HOLDINGS, INC. in its industry. Mr. Chen may provide testimony as to ASTON SOLAR AND ASTON HOLDINGS, INC.'S business relationship with Respondent, including, but not limited to, terms and conditions of any and all contracts and/or agreements between the parties. Mr. Chen will provide testimony concerning the work performed by ASTON SOLAR AND ASTON HOLDINGS, INC. and the services performed and materials used by Claimants. Mr. Chen will testify as to the reliance of ASTON SOLAR AND ASTON HOLDINGS, INC. upon the representations made by Respondents as to the payments to be made as a result of the work performed by ASTON SOLAR AND ASTON HOLDINGS, INC., the abilities of Claimants to perform the work in accordance with specifications, and the qualifications and skills of Respondent's employees. . . .

> It is Mr. Chen's opinion that Respondent failed to fully compensate Claimants for work and services performed on behalf of Respondent in accordance with the agreements between the Parties.

The arbitrator's final award, however, refers only to Aston Solar as the "Claimant" and does not mention Aston Holdings. Because the award does not

mention Aston Holdings, appellants contend that the award is not binding on Aston Holdings and that the trial court's judgment confirming the award as to Aston Holdings was erroneous.

Sunnova disagrees with appellants' argument and directs us to *Barton v. Fashion Glass & Mirror, Ltd.*, 321 S.W.3d 641 (Tex. App.—Houston [14th Dist.] 2010, no pet.). In *Barton*, four parties—FGM, Windoor, Barton, and DeRiso— entered into a rule 11 agreement, which included an arbitration clause. *Id.* at 644. A dispute arose, the parties submitted to arbitration, the arbitrator issued an award, and the trial court confirmed it. *Id.* On appeal, the appellants argued that the trial court erred in confirming the arbitration award as to Barton and DeRiso because "the arbitration award did not purport to include them." *Id.* This court rejected that argument. The rule 11 agreement collectively referred to all four parties, including Barton and DeRiso, as the "Parties" and provided that the "Parties" agreed to submit disputes to final and binding arbitration: "This language plainly states that all of the parties to the agreement, which include Barton and DeRiso, agree to arbitration and to be bound by the arbitration results." *Id.* at 645. The court also rejected the appellants' reliance on language in the arbitration award, which "consistently used the word 'Defendant.'" *Id.* The appellants posited that the arbitrator's use of the singular meant that the award covered only Windoor and did not include Barton and DeRiso. *Id.* We explained:

> This is too narrow a view in the circumstances. The arbitrator was working from the arbitration agreement, which explicitly states that all three appellants agreed to be bound by arbitration and had taken steps to fund any award against them. Further, all three appellants participated in the arbitration process. . . . Thus, when viewed in context of the language in the arbitration agreement, the information submitted by the parties, and the parties' conduct in the arbitration, the arbitrator's award is more reasonably read as including all three appellants.

13

*Id.*

We find *Barton* persuasive. Here, Aston Holdings agreed to be bound by the arbitration agreement and participated in the proceeding. Aston Holdings alleged in the arbitration that Sunnova was liable to Aston Holdings and affirmatively sought monetary relief from Sunnova. Further, although the award identified only Aston Solar as the claimant, we do not believe that the arbitrator intended to treat Aston Solar separately from Aston Holdings. In the award, the arbitrator sometimes referred to Aston Solar as "Aston" and sometimes referred generally to "claimant." "Claimant," as defined by appellants themselves during the arbitration proceeding, included both Aston Solar and Aston Holdings. We determine that, in view of all the circumstances, including the language of the CPA, as amended, and Aston Holdings' conduct during the arbitration, the arbitrator's award is properly construed as including Aston Holdings. *See id.* Therefore, the trial court did not err in confirming the award as to Aston Holdings.

We overrule appellants' second issue.

## Conclusion

We affirm the trial court's judgment.


/s/     Kevin Jewell
        Justice



Panel consists of Justices Jewell, Zimmerer, and Hassan.

14