# TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN

---

### NO. 03-23-00430-CV

---

**yDrink LLC, Appellant**

**v.**

**Soltero Sapire Murrell PLLC, Appellee**

---

**FROM THE 419TH DISTRICT COURT OF TRAVIS COUNTY**
**NO. D-1-GN-22-001772, THE HONORABLE JESSICA MANGRUM, JUDGE PRESIDING**

---

### M E M O R A N D U M   O P I N I O N

yDrink LLC appeals from the district court's judgment confirming an arbitration award in favor of Soltero Sapire Murrell PLLC ("SSM") in an attorney's fees dispute. yDrink argues that the district court erred by confirming the award because the arbitrator exceeded his powers. We affirm.

### BACKGROUND[1]

yDrink is an "alcohol data research firm that aggregates and provides alcohol sales data" to subscribers for an annual fee. Yoed Anise started the company using data compiled by the Comptroller of Public Accounts.

---

[1] We draw these undisputed facts from the pleadings and the evidence admitted by the district court in the proceeding to confirm the award.

Southern Glazer's Wine and Spirits (Glazer's)—the largest distributor of wine and spirits in Texas—became a client in 2008. Glazer's terminated the relationship in 2013 over a pricing dispute and set up its own in-house information service to compete with yDrink. By the end of 2018, Glazer's was ready to replace its in-house system. yDrink made sales presentations to Glazer's in 2018 and 2019. Following a presentation by Anise at Glazer's corporate offices, representatives of Glazer's told the Comptroller that Anise had impersonated a government official during the presentation. The Comptroller blocked yDrink's access to the data it required, and a grand jury indicted Anise for impersonating a government official.

The charges were dismissed, and yDrink retained SSM to investigate suing Glazer's. Based on the results of SSM's investigation, yDrink decided to pursue a civil suit against Glazer's. The parties negotiated a contingent fee arrangement, which they memorialized in an engagement letter. yDrink agreed to

> pay [SSM] a contingent fee of 35% of any gross recovery in the Matter. . . . Recovery is meant to include anything of value [yDrink] receives through settlement, judgment, or any other means attributable to any actions taken by [SSM]. . . . If the recovery is unliquidated, such as an agreement to provide benefits in the future, the value of the recovery means the present value of the property or benefit recovered as of the date of settlement or judgment. If any recovery includes non-monetary consideration, including but not limited to goods or services (whether tangible or intangible), the parties will agree on the fair value of that non-monetary consideration from which to calculate the recovery and derive the contingent fee.

Anise explained in a declaration submitted to the arbitrator that he agreed to that arrangement because he thought it was possible that the dispute could end in either monetary damages or Glazer's agreeing to resubscribe to yDrink's services.

yDrink, represented by SSM, sued Glazer's in August 2020 and the parties to that suit reached a settlement the following year. As relevant here, Glazer's executed an Application

2

Service Provider Agreement ("ASPA") agreeing to pay for three yDrink products collectively known as yDrink Complete. The ASPA had a five-year term, with an escalating annual fee due on April 1st.

After Glazer's paid the annual fee, $345,000 for the first year, yDrink and SSM disagreed about how to calculate SSM's 35% contingent fee share. SSM argues that it was entitled to 35% of each payment from Glazer's when yDrink receives them while yDrink argued that SSM is entitled to 35% of its profits on each payment. The parties subsequently executed a contract ("Arbitration Agreement") agreeing that "[a]ny controversy or claim arising out of or related to [SSM's representation of yDrink], the Dispute, or the Engagement Letter, including but not limited to any claim concerning its interpretation, shall be resolved by arbitration." The Arbitration Agreement provides that the Commercial Arbitration Rules of the American Arbitration Association ("AAA Rules") apply and that "[a]ny decisions by the Arbitrator relating to or resolving the Dispute shall be final and binding upon the Parties."

The arbitrator conducted a hearing in August 2021 and afterwards issued an award siding with SSM ("2021 Award"). The arbitrator explained in the 2021 Award that "[n]othing in the engagement letter suggests that SSM's 35% fee is to be calculated after examining yDrink's costs and determining yDrink's profit on the ASPA" and "such an exercise is the exact opposite of the common understanding of 'gross recovery.'" The arbitrator then addressed yDrink's argument that this construction was impractical because the "ASPA is not guaranteed for the full five years." The arbitrator disagreed because the Engagement Letter "obligates yDrink to pay 35% to SSM only as yDrink receives payments from Glazer's. If, for any reason, the ASPA does not survive the full five years or if Glazer's fails to pay, then yDrink has no obligation to pay SSM." Put more succinctly, "SSM's fee will be 35% of the money

3

yDrink receives, as and when yDrink receives it." Applying this reasoning, the arbitrator awarded SSM 35% of the payment Glazer's already made and "35% of the actual payments that yDrink receives from Glazer's during the remaining term of the ASPA, when and as yDrink receives such payments."

In 2022, yDrink decided to retire yDrink Complete and introduce a new product called yDrink Integral. Because the systems supporting the products were incompatible, yDrink required all its subscribers to upgrade to yDrink Integral. As part of this process, yDrink and each subscriber terminated the existing agreement between them and executed a Data Subscription Agreement ("DSA") for yDrink Integral. Glazer's elected to upgrade to yDrink Integral and executed both an agreement terminating the ASPA and a DSA.

On April 1, 2022, SSM informed yDrink that another payment was due. yDrink responded that its payment obligation ended with the termination of the ASPA because the 2021 Award states that "if, for any reason, the ASPA does not survive the full five years or if Glazer's fails to pay, then yDrink has no obligation to pay SSM." The following week, SSM submitted a letter to the arbitrator explaining the situation and asking him to order yDrink to explain why it had not violated the 2021 Award.

yDrink sued in Travis County District Court for declaratory relief that the termination agreement terminated the ASPA and yDrink therefore had no further payment obligations under the 2021 Award. SSM moved under the Texas Arbitration Act (TAA) to compel arbitration of yDrink's claim for declaratory judgment. *See generally* Tex. Civ. Prac. & Rem. Code §§ 171.001–.098. yDrink filed an amended petition with a claim to confirm the 2021 Award. SSM responded with a motion to remand the 2021 Award to the arbitrator to clarify whether yDrink's payment obligation survived the termination of the ASPA.

4

*See id.* § 171.054 (permitting arbitrators to "modify or correct" award on submission from court considering a motion to confirm, vacate, or modify award under TAA).

The district court compelled arbitration on yDrink's claim for declaratory judgment and remanded the 2021 Award for clarification.[2] The arbitrator clarified by order that terminating the ASPA did not end yDrink's payment obligations. After hearing evidence and considering post-hearing briefing, the arbitrator rendered a second award ("2023 Award"). The 2023 Award incorporated the clarification order and awarded SSM "35% of the gross payments that yDrink has or will receive from Glazer's, including but not limited to 35% of the gross payments that Glazer's has or will make to yDrink under the DSA." To "avoid any future uncertainty arising from a new contract or other arrangement that yDrink purports to make with Glazer's," the arbitrator reserved "continuing jurisdiction to determine any further disputes between the parties regarding their rights and obligations under the Engagement Letter."

SSM asked the district court to confirm the 2023 Award. yDrink moved to vacate the 2023 Award to the extent it entitled SSM to more money than it would have recovered under the 2021 Award if the ASPA still existed. The district court entered a final judgment confirming the 2023 Award.

## DISCUSSION

yDrink argues in two issues that the arbitrator exceeded his powers by altering or expanding the relief granted in the 2021 Award and by unilaterally reserving "continuing jurisdiction."

---

[2] The same arbitrator presided over both proceedings.

5

**Legal Standards**

The TAA confers jurisdiction on Texas courts to enforce agreements to arbitrate and to render judgment on resulting awards. Tex. Civ. Prac. & Rem. Code § 171.081.[3] "Because Texas law favors arbitration, judicial review of an arbitration award is extraordinarily narrow." *East Tex. Salt Water Disposal Co. v. Werline*, 307 S.W.3d 267, 271 (Tex. 2010). By default, "[u]nless grounds are offered for vacating, modifying, or correcting an award," the trial court "shall confirm the award." Tex. Civ. Prac. & Rem. Code § 171.087.

The ground for vacating an award relevant here is that the "arbitrators exceeded their powers." *Id.* § 171.088(a)(3)(A). In an arbitration "conducted by agreement of the parties, the rule is well established that '[a]n arbitrator derives his power from the parties' agreement to submit to arbitration.'" *Nafta Traders, Inc. v. Quinn*, 339 S.W.3d 84, 90 (Tex. 2011) (quoting *City of Pasadena v. Smith*, 292 S.W.3d 14, 20 (Tex. 2009)). Thus, an arbitrator "exceeds his authority when he disregards the contract and dispenses his own idea of justice." *D.R. Horton-Tex., Ltd. v. Bernhard*, 423 S.W.3d 532, 534 (Tex. App.—Houston [14th Dist.] 2014, pet. denied). The "proper inquiry is not whether the arbitrator decided an issue correctly, but rather, whether he had the authority to decide the issue at all." *Forest Oil Corp. v. El Rucio Land & Cattle Co.*, 518 S.W.3d 422, 431 (Tex. 2017); *see Denbury Onshore, LLC v. Texcal Energy S. Tex., L.P.*, 513 S.W.3d 511, 520 (Tex. App.—Houston [14th Dist.] 2016, no pet.) ("Contentions that the arbitrator's reasoning was legally erroneous or internally inconsistent, or that the arbitrator misinterpreted the contract or misapplied the law do not provide a basis for vacating an award.").

---

[3] The parties agree that the TAA, rather than the Federal Arbitration Act, governs this case. *See G.T. Leach Builders, LLC v. Sapphire V.P., LP*, 458 S.W.3d 502, 519 n.14 (Tex. 2015) (presuming TAA applies absent argument to contrary).

We review a trial court's decision to confirm or vacate an arbitration award for an abuse of discretion, deferring to the trial court's factual findings but reviewing legal questions de novo. *Aerotek, Inc. v. Boyd*, 624 S.W.3d 199, 204 n.19 (Tex. 2021) (citing *Henry v. Cash Biz, LP*, 551 S.W.3d 111, 115 (Tex. 2018)). Whether an arbitrator exceeded his powers under an arbitration agreement is a legal question. *Barton v. Fashion Glass & Mirror, Ltd.*, 321 S.W.3d 641, 646 (Tex. App.—Houston [14th Dist.] 2010, no pet.). We start with the presumption that "an arbitrator's actions were within his authority" and "resolve all doubts in favor of the award." *Elite Framing v. BBL Builders, L.P.*, No. 05-15-01430-CV, 2016 WL 3346041, at *3 (Tex. App.—Dallas June 15, 2016, pet. denied) (mem. op.).

Here, that analysis requires interpretation of the Arbitration Agreement. "Arbitration agreements are interpreted under traditional contract principles." *In re Whataburger Rests. LLC*, 645 S.W.3d 188, 194 (Tex. 2022) (orig. proceeding) (citing *J.M. Davidson, Inc. v. Webster*, 128 S.W.3d 223, 227 (Tex. 2003)). The "plain language" of the agreement controls, but "[w]ords must be construed 'in the context in which they are used,'" and we will "examine and consider the entire writing in an effort to harmonize and give effect to all the provisions of the contract so that none will be rendered meaningless." *Id.* at 194–95 (citations omitted).

**No Alteration or Expansion of the 2021 Award**

yDrink first argues that the arbitrator exceeded his powers because the AAA Rules and Texas law prohibit arbitrators from revising prior awards on the merits of any claim.

Rule 52(a) of the AAA Rules provides in relevant part:

> Within 20 calendar days after the transmittal of any award, any party, upon notice to the other parties, may request the arbitrator, through the AAA, interpret the award or correct any clerical, typographical, or computational errors in the award.

> *The arbitrator is not empowered to re-determine the merits of any claim already decided.*

(Emphasis added). Texas law similarly "bars an arbitrator from revisiting the merits of an award once the award has been issued." *Stage Stores, Inc. v. Gunnerson*, 477 S.W.3d 848, 856 (Tex. App.—Houston [1st Dist.] 2015, no pet.).

yDrink argues that the arbitrator violated this prohibition because the 2023 Award alters the relief granted in the 2021 Award. More specifically, the 2021 Award awards SSM 35% of the payment Glazer's had already made and "35% of the actual payments that yDrink receives from Glazer's during the remaining term of the ASPA, when and as yDrink receives such payments" but the 2023 Award clarifies that yDrink's payment obligation did not cease with the termination of the ASPA and grants SSM 35% of the payments yDrink "has or will receive from Glazer's, including but not limited to 35% of the gross payments that Glazer's has or will make to yDrink under the DSA."[4] SSM responds that the arbitrator did not revisit the merits of the 2021 Award but granted relief on a new claim.

We agree with SSM. First, the arbitrator did not violate Rule 52(a) or Texas law by clarifying that yDrink's payment obligations did not depend on the existence of the ASPA. While Rule 52(a)'s twenty-day period to request clarifications had long passed, the TAA expressly permits arbitrators to modify or clarify an award "on submission to the arbitrators by a court" if an application to confirm or vacate an award is pending before the court, which was the case here. Tex. Civ. Prac. & Rem. Code § 171.054(b)(2). The district court expressly invoked this provision in its order staying the case, and yDrink does not explain why this was error.

---

[4] yDrink does not contest SSM's recovery of a contingency fee from the first four DSA payments as long as the extent the total paid by yDrink does not exceed $603,750, plus applicable escalators.

The arbitrator did not revisit the merits of the 2021 Award in the 2023 Award. The 2021 Award decided the meaning of "gross recovery" in the Engagement Letter and applied it only to the payments from Glazer's under the ASPA. In the 2023 Award, the arbitrator resolved SSM's new claim that yDrink violated the Engagement Letter through terminating the ASPA and executing the DSA. As relief for that violation, the arbitrator awarded SSM 35% of the payments yDrink receives from Glazer's under the DSA or another contract. Nothing in the 2023 Award revisits the issues decided in the 2021 Award or purports to modify the relief granted in the 2021 Award. In other words, the arbitrator decided and awarded relief on a different claim based on different facts.[5]

yDrink also argues that the arbitrator exceeded his powers in another respect: that the award of 35% of the gross payments that yDrink has or will receive from Glazer's, "including but not limited to 35% of the gross payments that Glazer's has or will make to yDrink under the DSA," "could be read to mean the arbitrator awarded SSM 35% of any 'other' payments Glazer's ever may make to yDrink, at any time in the future, for reasons that cannot even be predicted at this time—essentially a perpetual royalty." But we cannot construe this sentence in isolation. *See In re Whataburger Rests.*, 645 S.W.3d at 194–95. Read in context of the arbitrator's conclusion that terminating the ASPA and replacing it with the DSA "was an

---

[5] That distinguishes this case from yDrink's main authority—*Barsness v. Scott*, 126 S.W.3d 232, 235 (Tex. App.—San Antonio 2003, pet. denied). In that case—which involved a dispute over the purchase of stock in two companies—Scott requested money damages, attorney's fees, and a recalculation of how much he owed on the purchase. *Id.* at 235. A panel of arbitrators concluded that Scott was entitled to the recalculation and denied all other relief. *Id.* at 236–37. In response to Scott's "Motion for Modification or Clarification of the Award," the panel modified the award to designate Scott as the prevailing party and award him one dollar in damages and $356,613.76 in attorney's fees. *Id.* The court of appeals held that the arbitration panel exceeded its powers because the issues of damages and attorney's fees had already been presented to the panel and rejected by them. *Id.* at 241. Here, in contrast, the issues in the second arbitration were not rejected—or even considered—in the first arbitration.

9

attempt to avoid yDrink's obligations" under the Engagement Letter, we interpret the "including but not limited to" language to mean only that yDrink's payment obligations could transfer to any contract that replaces the ASPA.

Reviewing the issue de novo and resolving all doubts in favor of the 2023 Award, *see Elite Framing*, 2016 WL 3346041, at *3, we conclude that yDrink failed to rebut the presumption that the arbitrator acted within his powers in clarifying the 2021 Award and ruling that SSM is entitled to 35% of "the gross payments that yDrink has or will receive from Glazer's, including but not limited to 35% of the gross payments that Glazer's has or will make to yDrink under the DSA." We overrule yDrink's first issue.

**Continuing Jurisdiction**

yDrink argues in its second issue that the arbitrator exceeded his powers by reserving "continuing jurisdiction to determine any further disputes between the parties regarding their rights and obligations under the Engagement Letter" because it conflicts with the Arbitration Agreement's requirement that he render a final award. SSM responds that the Arbitration Agreement gave the arbitrator authority "over yDrink's compliance with the Second Award and any further disputes" over SSM's fee.

We agree with SSM. yDrink relies on four provisions of the Arbitration Agreement:

> "[T]he Parties desire to resolve the Dispute fully, finally, and irrevocably by arbitration as more fully set forth in this Agreement."

> "The Parties agree that the decision by the Arbitrator is final, binding, and not appealable."

10

"Any decisions by the Arbitrator relating to or resolving the Dispute shall be final and binding upon the Parties. Both Parties waive the right to appeal the Arbitrator's decision."

"Each Party shall submit to any court of competent jurisdiction for purposes of the enforcement of any award, order, or judgment. Any award, order, or judgment pursuant to any arbitration under this Agreement is final and may be entered and enforced in any court of competent jurisdiction."

yDrink argues that "each provision independently, and certainly in the aggregate," requires the arbitrator to render a "final" award rather than reserving continuing jurisdiction. We agree with yDrink that these provisions require the arbitrator to render an award disposing of all the issues submitted to the arbitrator at a particular time. *Cf. Collins v. Tex Mall, L.P.*, 297 S.W.3d 409, 415 (Tex. App.—Fort Worth 2009, no pet.) (stating common-law rule that "[a]n arbitration award must determine all matters submitted or it will be unenforceable for lack of finality" (citing *Porter v. Irvine*, 658 S.W.2d 711, 713–14 (Tex. App.—Houston [1st Dist.] 1983, no writ))).

But requiring the arbitrator to render a final award, specifying how to enforce it, and expressing the intention to fully resolve the subject dispute is not necessarily inconsistent with the arbitrator retaining continuing jurisdiction. The parties agreed that they would arbitrate "any controversy or claim arising out of or related to [SSM's representation of yDrink], the Dispute, or the Engagement Letter, including but not limited to any claim concerning its interpretation." "Dispute," for these purposes, means the disagreement "about the amount of [SSM's] fee" due under the Engagement Letter. The Arbitration Agreement is not limited to the fee dispute itself but also encompasses any controversy or claim relating to SSM's representation of yDrink or the Engagement Letter. Moreover, there is no requirement that the facts supporting the "controversy or claim" exist at the time the parties executed the Arbitration Agreement.

11

Construing the Arbitration Agreement as a whole, it does not preclude the arbitrator from deciding future disputes that are within its scope. *See Nafta Traders*, 339 S.W.3d at 90 ("Whether enforcing an agreement to arbitrate or construing an arbitration clause, courts and arbitrators must give effect to the contractual rights and expectations of the parties." (citing *Stolt-Nielsen S.A. v. AnimalFeeds Int'l Corp.*, 559 U.S. 662, 682 (2010))). Thus, by reserving continuing jurisdiction "to determine any further disputes between the parties regarding their rights and obligations under the Engagement Letter," the Arbitrator simply stated his authority under the Arbitration Agreement. We overrule yDrink's second issue.

## CONCLUSION

We affirm the district court's judgment.

_____

Rosa Lopez Theofanis, Justice

Before Chief Justice Byrne, Justices Smith and Theofanis

Affirmed

Filed: May 31, 2024

12