**BAKER HUGHES OILFIELD OPERATIONS, INC.,**
Appellant,

v.

**HENNIG PRODUCTION CO., INC., Appellee.**

No. 14–04–00009–CV.

Court of Appeals of Texas, Houston (14th Dist.).

March 24, 2005.

Geoffrey H. Bracken, Stacy R. Obenhaus, Houston, Cynthia Hollingsworth, Dallas, for appellant.

David W. Pace, Houston, for appellee.

Panel consists of Justices YATES, EDELMAN, and GUZMAN.

## OPINION

EVA M. GUZMAN, Justice.

In this arbitration case, Baker Hughes Oilfield Operations appeals from a summary judgment in favor of Hennig Production Company confirming an arbitration award and from the trial court's order denying Baker Hughes' request to vacate or modify the award. Baker Hughes argues the trial court erred in (1) granting summary judgment because the arbitrators allegedly exceeded their powers; (2) modifying the arbitration award; and (3) failing to issue findings of fact. We hold the arbitrators did not exceed their powers and the trial court did not otherwise err, accordingly we affirm the trial court's judgment.

## I. FACTS AND PROCEDURAL BACKGROUND

Hennig contacted Baker Hughes about perforating a formation in a well Hennig was operating. On July 30, 2001, Baker Hughes' employees came to the well site and fired the perforation charges; however, the perforating tool—the "gamma gun"—collapsed in the well and Baker Hughes' employees were unable to remove it. They rigged down the service unit, leaving the tool in the well. Hennig subsequently performed "fishing" operations, attempting to retrieve the tool.

On September 12, 2001, Hennig signed Baker Hughes' field service order for "lost tools," and on September 28, Baker Hughes invoiced Hennig for the tool remaining in the well. Shortly thereafter, Hennig retrieved a part of the tool from the well and then refused to pay Baker Hughes' invoice, claiming the recovered part indicated the tool had collapsed because it did not conform to Hennig's pressure specifications.

Baker Hughes filed a demand for arbitration in accordance with the arbitration provision contained in its field service order, seeking damages from Hennig for lost tools, interest, and attorneys' fees. Hennig counterclaimed for damages to the well resulting from the collapse of the perforating tool. The arbitration lasted four days, during which time the panel received testimony from twelve witnesses, admitted twenty-nine exhibits from Baker Hughes, and fifty-eight exhibits from Hennig. The parties filed numerous arbitration pleadings, submitted post-hearing briefs and presented oral arguments. The panel found in favor of Hennig, awarding $351,090.43 in damages.

Hennig filed a motion to confirm and enforce the arbitration award in the trial court, but subsequently filed a motion for summary judgment seeking confirmation. Baker Hughes filed a motion to vacate the award or, alternatively, to modify it. The trial court considered both motions and signed a final summary judgment in favor of Hennig. This appeal ensued.

## II. ANALYSIS

In its first appellate issue, Baker Hughes contends the arbitrators exceeded their powers and therefore, the trial court erred in confirming the arbitration award and in denying its motion to vacate. Baker Hughes asserts in its second issue that the trial court improperly modified the award by including a date for the accrual of prejudgment interest and, in its third issue, argues the trial court erred in failing to file findings of fact. We address Baker Hughes' third issue first because, should we sustain the issue, we must remand the case to the trial court.

## A. Findings of Fact

■ Baker Hughes requests we abate this appeal and remand to the trial court for entry of findings of fact regarding the court's order denying Baker Hughes' motion to vacate or modify the arbitration award. Although the trial court rendered a summary judgment, Baker Hughes argues that findings of fact are required because the trial court signed a separate order denying its motion to vacate and the hearing on that motion was not a summary proceeding.

■ It is well settled that findings of fact are not proper in a summary judgment context. *See, e.g., IKB Indus. (Nigeria) Ltd. v. Pro-Line Corp.,* 938 S.W.2d 440, 441–42 (Tex.1997); *Golden v. McNeal,* 78 S.W.3d 488, 495 (Tex.App.-Houston [14th Dist.] 2002, pet. denied). There cannot be a genuine issue as to any material fact for summary judgment to be properly rendered and the legal grounds are limited to those stated in the summary judgment motion and any response. *IKB Indus.,* 938 S.W.2d at 441. Hence, there are no facts to find. *Id.* Because this case was disposed of through summary judgment, we conclude that findings of fact are not warranted under the circumstances of this case. Moreover, many of Baker Hughes' proposed findings and conclusions were contrary to the trial court's judgment and thus, were properly denied. *See In re Marriage of Grossnickle,* 115 S.W.3d 238, 254 (Tex.App.-Texarkana 2003, no pet.). Accordingly, we reject Baker Hughes' request for a remand to the trial court to issue findings of fact and overrule its third issue.

## B. Arbitration Proceedings

■ Baker Hughes also argues the arbitrators exceeded their powers by deciding an issue that was not submitted to them and, further, they committed a "gross mistake" that requires vacating the arbitration award. Both parties agree the suit is governed by the Texas Arbitration Act ("TAA"),[1] and we examine Baker Hughes' arguments with reference to that statute when necessary.

### 1. *Standard of review*

■ Texas substantive law favors arbitration. *Crossmark, Inc. v. Hazar,* 124 S.W.3d 422, 429 (Tex.App.-Dallas 2004, pet. denied). An arbitration award has the same effect as the judgment of a court of last resort, and a court reviewing the award may not substitute its judgment for that of the arbitrators merely because it would have reached a different result. *Id.* Nor may a reviewing court set aside an arbitration award for a mere mistake of fact or law. *Id.; Anzilotti v. Gene D. Liggin, Inc.,* 899 S.W.2d 264, 266 (Tex. App.-Houston [14th Dist.] 1995, no writ). A reviewing court lacks jurisdiction to review complaints that do not assert statutory, common law, or public policy grounds to vacate or modify the award. *Crossmark,* 124 S.W.3d at 429 (citing *CVN Group, Inc. v. Delgado,* 95 S.W.3d 234, 239 (Tex.2002)).

■ Under the TAA, upon application by a party, the trial court "shall" confirm an arbitration award unless the party opposing confirmation presents grounds for vacating, modifying, or correcting the award. TEX. CIV. PRAC. & REM.CODE ANN. § 171.087. An application under the Act is heard in the same manner and on the same notice as a motion in a civil case. *Id.* § 171.093. Generally, a summary judgment motion is not required for the trial court to confirm, modify, or vacate an arbitration award, but if a party chooses to pursue confirmation of the award through sum-

---

1. TEX. CIV. PRAC. & REM.CODE ANN. § 171.001– .098 (Vernon Supp.2004–05).

mary judgment proceedings rather than the motion procedure under the TAA, that party assumes the traditional burdens and requirements of summary judgment practice. *Crossmark*, 124 S.W.3d at 430 (citing *Mariner Fin. Group, Inc. v. Bossley*, 79 S.W.3d 30, 32, 35 (Tex.2002)). Therefore, although we apply the standards of review for arbitrations, we also apply those for summary judgments. *See id.* at 430–31; *Teleometrics Int'l, Inc. v. Hall*, 922 S.W.2d 189, 193 (Tex.App.-Houston [1st Dist.] 1995, writ denied). To the extent presumptions in favor of an arbitration award conflict with summary judgment standards of review, the arbitration rules "must yield to ... the presumptions in favor of a non-movant." *Tuco Inc. v. Burlington N. R.R. Co.*, 912 S.W.2d 311, 315 (Tex.App.-Amarillo 1995), *aff'd as modified*, 960 S.W.2d 629 (Tex.1997). Where the parties do not dispute the facts, review of a summary judgment properly focuses on whether the trial court correctly applied the law to the facts. *Crossmark*, 124 S.W.3d at 431. Any error of law made by the arbitrators, however, cannot be reviewed by a court confirming the award. *Id.* at 434.

Here, Hennig sought to confirm the arbitration award through summary judgment and thus, it had the burden to show there were no genuine issues of material fact prohibiting confirmation of the award, that is, no material facts regarding the grounds asserted by Baker Hughes to vacate, modify, or correct the award. *See Crossmark*, 124 S.W.3d at 431; *Brozo v. Shearson Lehman Hutton, Inc.*, 865 S.W.2d 509, 510–11 (Tex.App.-Corpus Christi 1993, no writ); *see also* TEX. CIV. PRAC. & REM.CODE ANN. § 171.087 (Vernon Supp.2004–05) ("Unless grounds are offered for vacating, modifying, or correcting an award ... the court, on application of a party, shall confirm the award."); *Mariner*, 79 S.W.3d at 32.

Baker Hughes relies on two statutory grounds for relief from the arbitration award: Sections 171.088 and 171.091 of the Civil Practice and Remedies Code. *See* TEX. CIV. PRAC. & REM.CODE ANN. §§ 171.088(a)(3)(A), 171.091(a)(2).[2] We examine Baker Hughes' claims.

## 2. *Baker Hughes' "exceeded powers" claims*

■ Baker Hughes acknowledges the arbitrators' authority is derived from the arbitration agreement and is limited to a decision of the matters submitted therein, either expressly or by necessary implication. *Gulf Oil Corp. v. Guidry*, 160 Tex. 139, 327 S.W.2d 406, 408 (1959); *J.J. Gregory Gourmet Servs., Inc. v. Antone's Import Co.*, 927 S.W.2d 31, 35 (Tex.App.-Houston [1st Dist.] 1995, no writ). Here, Baker Hughes' field service order contained the agreement to arbitrate,[3] stating the parties would arbitrate "any controversy or claim arising out of or relating to the Agreement or to [Baker Hughes'] services, equipment, or products provided to Customer." This is, by its plain language, a broad arbitration provision and subsumes *any* controversy or claim arising out of or relating to Baker Hughes' services. *See Babcock & Wilcox Co. v. PMAC, Ltd.*, 863

---

**2.** Section 171.088(a)(3)(A) provides that a court shall vacate an award if the arbitrators exceeded their powers. TEX. CIV. PRAC. & REM. CODE ANN. § 171.088. Section 171.091(a)(2) provides that a court shall modify or correct an award if the arbitrators have made an award with respect to a matter not submitted to them and the award may be corrected without affecting the merits of the decision. *Id.* § 171.091.

**3.** The parties stipulated that the contract between them for purposes of the arbitration and "disposition of their respective claims" was as represented in Baker Hughes' field service order.

S.W.2d 225, 231 (Tex.App.-Houston [14th Dist.] 1993, writ denied). Baker Hughes acknowledges this as well. But, Baker Hughes' argues that because Hennig failed to specifically plead breach of contract claims and "disavowed" this was a contract case, Hennig removed contract claims from the "scope of the arbitration," and consequently, by deciding the issue, the arbitrators exceeded their powers.

In support of its argument, Baker Hughes relies on *City of Baytown v. C.L. Winter, Inc.*, 886 S.W.2d 515, 518–19 (Tex. App.-Houston [1st Dist.] 1994, writ denied). In *City of Baytown*, the appellant argued the arbitrators exceeded their powers because, in part, the appellee never complained about an issue in its original or amended specification of claims. 886 S.W.2d at 518. The court disposed of the issue by noting that the broad arbitration provision in that case—covering "all questions of dispute"—permitted the arbitrators to render an award based on the issue, stating "[i]n light of the broad arbitration clause … the arbiters did not exceed their authority." *Id.* In its examination of the issue, however, the court included the parties' "pleadings" as well as the appellee's specification of claims. *Id.* Relying on that language, Baker Hughes asserts that a determination of the arbitrators' powers is based on the parties' specific claims.[4] We reject this assertion. It has long been held that the arbitrators' powers are defined by the arbitration agreement. *Gulf Oil Corp.*, 327 S.W.2d at 408. *City of Baytown* does not represent a contrary conclusion. Indeed, the *Baytown* court expressly affirmed this long standing principle and concluded that the broad arbitration provision covered all questions of dispute between the parties, including the issue appellant alleged was not raised in the claims. 886 S.W.2d at 518.

Baker Hughes' argues that Hennig did not specifically assert a breach of contract claim in its initial pleadings and therefore, the arbitrators' powers were limited to Hennig's DTPA and breach of warranty claims. Reading the arbitration agreement and pleadings as narrowly as Baker Hughes advocates is contrary to Texas law. *See Guidry*, 327 S.W.2d at 408 (stating the arbitration agreement defines the arbitrators' powers and they decide issues expressly and impliedly submitted); *see also Monday v. Cox*, 881 S.W.2d 381, 385 (Tex.App.-San Antonio 1994, writ denied) (stating arbitration pleadings are to be construed liberally). Baker Hughes' argument is also contrary to law favoring arbitration. Thus, we cannot agree with Baker Hughes' contention.[5]

---

**4.** Baker Hughes also relies on *Monday v. Cox*, 881 S.W.2d 381, 385 (Tex.App.-San Antonio 1994, writ denied). In that case, the appellate court reviewed the trial court's order refusing to enforce the arbitrator's award of attorney's fees. *Id.* at 383. The parties' agreement also contained a broad arbitration clause. *Id.* Noting the deference given to the arbitrator's decision, the court looked to the limited statutory provisions enabling a trial court to set aside an award and concluded, under those circumstances, that the issue was whether the matter of attorney's fees had been submitted to the arbitrator. *Id.* at 384. To determine this, the appellate court also examined the parties' statements of claims presented to the arbitrator, determined the matter had been submitted, and concluded the trial court erred in setting aside that portion of the award. *Id.* at 383–84. In this case, there is nothing in the record to indicate the parties narrowed the scope of the arbitration agreement through a submission agreement, or any other such agreement.

**5.** To the extent Baker Hughes argues a party is prohibited from asserting both tort and contract claims in an arbitration proceeding, we reject that position as well. When the arbitration agreement between parties is broad, such as the one here and covers "any claims," the parties may bring tort claims arising in connection with the dispute. *See,*

Moreover, even were we to look to the parties' arbitration pleadings in this case to determine whether the arbitrators exceeded their powers by deciding an issue not submitted to them—but within the scope of the agreement—the pleadings reflect that Hennig's contract claims were in fact submitted for a determination by the panel.

### 3. *Contract claims were submitted to the arbitrators*

 In its demand for arbitration, Baker Hughes defined the nature of the dispute as "[Hennig] has failed to make payments for work performed and services provided by [Baker Hughes]." In response, Hennig alleged violations of the DTPA, misrepresentations, breach of express warranties, negligence, negligent misrepresentation, defective performance of contract, and reckless conduct by Baker Hughes. Hennig also asserted that Baker Hughes' express warranties constituted a modification of the contract terms and disclaimers between the parties. Subsequent arbitration pleadings filed by the parties also reflect that various contract claims were raised and submitted to the arbitrators. *See Thomas v. Prudential Sec., Inc.,* 921 S.W.2d 847, 849 (Tex.App.-Austin 1996, no writ) (stating that when parties actually submit an issue to the arbitrators, courts look to the scope of the submissions to determine if an arbitration panel exceeded its authority). Further, throughout the arbitration proceedings, Baker Hughes argued Hennig's claims were merely breach of contract claims and Hennig asserted that Baker Hughes' liability in the case arose from both tort and contract princi-

ples. Importantly, in its post-hearing brief, Hennig argued that its counterclaims involved tools and services provided by Baker Hughes *pursuant to an oral agreement* between the parties. Baker Hughes responded to Hennig's claim, arguing that Hennig was bound to the terms of the field service order as the written agreement of the parties and was bound to its assumption of the risk, to the entireties clause, and the indemnification and hold harmless provisions contained in the agreement.[6]

Plainly, the parties submitted breach of contract claims to the arbitrators, Baker Hughes responded, and the arbitrators decided the matter in Hennig's favor. We reject Baker Hughes' argument that the arbitrators exceeded their powers by deciding breach of contract issues.

Likewise, we reject Baker Hughes' assertion that because Hennig asserted tort claims, Hennig avoided parol evidence issues and Baker Hughes' contract and UCC defenses. The record reflects that Baker Hughes' contract and UCC defenses were submitted to the arbitrators and rejected by them. For example, in its response to Baker Hughes' request for summary disposition, Hennig listed Baker Hughes' arguments in part as: (1) the risk of loss was allocated to Hennig under the contract; (2) Baker Hughes disclaimed implied warranties of merchantability and fitness for a particular purpose; and (3) Baker Hughes' contract limited its liability to compensation received from Hennig. These statements evidence that Baker Hughes asserted breach of contract and UCC defenses, Hennig responded to those

---

*e.g., Jack B. Anglin Co. v. Tipps,* 842 S.W.2d 266, 271 (Tex.1992) (holding DTPA claims were arbitrable); *Kline v. O'Quinn,* 874 S.W.2d 776, 782 (Tex.App.-Houston [14th Dist.] 1994, writ denied) (holding that in absence of limiting language, a broad arbitra-

tion agreement encompassed the parties' tort claims).

**6.** Oral argument was allowed following the post-hearing briefs.

defenses, and the panel considered, but rejected those defenses.

### 4. *Baker Hughes' "gross mistake" claims*

■ Regarding Baker Hughes' first issue, we address its common-law argument that, by awarding Hennig cost-of-repair damages, the panel failed to exercise honest judgment, committing a "gross mistake" which requires vacating the award.[7] Baker Hughes claims that the award of damages was in error because Hennig failed to prove its repairs were reasonable and necessary and only proved their actual cost.

■ Under the common law, an arbitration award may be set aside if the decision appears to be tainted with "gross mistake as would imply bad faith and failure to exercise honest judgment." *IPCO–G.&C. Joint Venture v. A.B. Chance Co.*, 65 S.W.3d 252, 258 (Tex.App.-Houston [1st Dist.] 2001, pet. denied).

■ A party seeking recovery for costs of repair must prove their reasonable value. *Ebby Halliday Real Estate, Inc. v. Murnan*, 916 S.W.2d 585, 589 (Tex.App.-Fort Worth 1996, writ denied). However, to establish the right to recover repair costs, it is not necessary to use the words "reasonable" and "necessary." *Id.* A claimant need only present sufficient evidence to justify the finding that the costs were reasonable and the repairs necessary. *Id.*

Here, Hennig pleaded that its fishing operations were reasonable, prudent, and in accordance with generally accepted standards. Importantly, Baker Hughes argued that Hennig's damages, if any, and if not precluded by the contract, were limited to the cost of repairing the well, which

it stated was $351,090.43. In its arbitration award, the panel stated that it was "undisputed" that the fishing costs were $351,090.43, "which the Arbitration Panel find[s] to be reasonable and necessary." Based on the foregoing, the record does not demonstrate a "gross mistake" was made.

In conclusion, regarding Baker Hughes' first issue, the agreement to arbitrate is a broad provision and covers the contract issues submitted by the parties to the arbitrators. The arbitrators did not exceed their powers, and we overrule Baker Hughes' first issue.

### C. Prejudgment Interest

■ In the arbitration award, Hennig received prejudgment interest "at 6% per annum until the date of the Arbitration Award," but the date prejudgment interest began accruing was omitted. In its final judgment, the trial court corrected the award to include an accrual date, inserting the day Baker Hughes filed for arbitration. In its second appellate issue, Baker Hughes argues this was error because it resulted in the trial court, rather than the panel, deciding a substantive legal issue affecting the merits of the controversy—the *amount* of prejudgment interest. Hennig argues in response that the award is imperfect in form, the date inserted as an accrual date is contained in the award, inclusion of an accrual date does not impact the merits of the controversy, and therefore, under the TAA, the trial court's correction was permissible. We agree.

■ Under the TAA, a reviewing court may modify or correct an arbitration award only under very limited circumstances. *See* TEX. CIV. PRAC. & REM.CODE ANN. § 171.091. As it applies to this case,

---

**7.** Baker Hughes also argues the panel committed a gross mistake by "awarding on matters not submitted." We have already addressed those arguments above.

the TAA provides that a court "shall" modify or correct an award if, on timely application, "the form of the award is imperfect in a manner not affecting the merits of the controversy." *Id.* § 171.091(a)(3). Further, if the application to modify is granted, the trial court "shall modify or correct the award to effect its intent." *Id.* § 171.091(c). The trial court, however, cannot speculate as to the intent of the arbitrators. *Riha v. Smulcer,* 843 S.W.2d 289, 293 (Tex.App.-Houston [14th Dist.] 1992, writ denied).

■ A prevailing party receives prejudgment interest as a matter of course. *See Bituminous Cas. Corp. v. Vacuum Tanks, Inc.,* 75 F.3d 1048, 1057 (5th Cir. 1996) ("[A]n equitable award of prejudgment interest should be granted to a prevailing plaintiff in all but exceptional circumstances."). In this case, the panel awarded Hennig prejudgment interest, but failed to include a date enabling its calculation. The date inserted by the trial court conforms to the prejudgment interest calculations required under Texas law. *See Johnson & Higgins of Tex., Inc. v. Kenneco Energy, Inc.,* 962 S.W.2d 507, 531 (Tex. 1998) (holding that prejudgment interest begins to accrue on the earlier of (1) 180

days after the date a defendant receives written notice of a claim or (2) the date suit is filed, and is computed as simple interest). Indeed, in response to Hennig's request to include an accrual date, Baker Hughes argued that the correct date was either the 180th day after written notice of the claim or the date suit was filed, whichever was earliest. The date inserted by the trial court adopts Baker Hughes' argument.[8] Moreover, on appeal, Baker Hughes does not argue that the date inserted is incorrect, nor that fact issues indicate another date would be more correct. Baker Hughes argues only that its inclusion affects the merits of the controversy.

This is not a case in which the arbitrators did not award prejudgment interest, yet a trial court modified the award to include it.[9] This case is also distinguishable from the case relied on by Baker Hughes, *International Bank of Commerce–Brownsville v. International Energy Development Corp.,* 981 S.W.2d 38, 53–54 (Tex.App.-Corpus Christi 1998, pet. denied). In that case, the trial court modified the post-judgment interest rate awarded by the arbitrators. *Id.* The appellate court determined the trial court

---

**8.** Hennig timely filed a motion to modify the award with the panel, requesting the attorneys' fees awarded be modified. In response, Baker Hughes argued the request sought a substantive modification of the award and should be denied. Subsequently, Hennig filed a letter requesting that the panel add a prejudgment interest accrual date. Baker Hughes argued in response that the request was untimely and, out of an "abundance of caution," that the accrual date requested by Hennig was incorrect. Baker Hughes stated that the correct accrual date was either the 180th day after written notice of the claim or the date suit was filed, whichever was earliest. The panel denied Hennig's requests. In its order, the panel stated that the request to modify attorneys' fees was one to "redetermine the merits of its Award," denying it on that basis. However, the panel denied Hen-

nig's request to add an accrual date as being untimely.

**9.** *See generally Schlobohm v. Pepperidge Farm, Inc.,* 806 F.2d 578, 581 (5th Cir.1986) (stating broad arbitration agreement may cover issue of prejudgment interest causing a court's award of interest to be "additional relief"); *Nuno v. Pulido,* 946 S.W.2d 448, 451–52 (Tex. App.-Corpus Christi 1997, no writ) (concluding issue of prejudgment interest was submitted to arbitrators and thus, trial court's award of interest was in error); *Kermacy v. First Unitarian Church of Austin,* 361 S.W.2d 734, 735–36 (Tex.Civ.App.-Austin 1962, writ ref'd n.r.e.) (concluding claim for prejudgment interest prior to award was submitted to arbitrators and merged into the award).

erred because there was no statutory or case law supporting the modification. *Id.* Here, however, the trial court did not modify the prejudgment interest rate or the award of interest itself; instead, the trial court's judgment merely effectuates the arbitrators' award of interest and is therefore permitted under Section 171.091, which directs the court to modify the form of an otherwise imperfect award. *See* Tex. Civ. Prac. & Rem.Code Ann. § 171.091(a)(3), (c).

As evidenced by the award, the arbitrators intended to award prejudgment interest. Thus, the trial court did not resort to speculation regarding the arbitrators' intent, but only corrected the form of an imperfect award to effectuate that intent. We conclude that the trial court did not err in correcting the arbitration award, and Baker Hughes' second issue is overruled.

### D. Sanctions

■■■■ Finally, Hennig requests we award damages under Rule of Appellate Procedure 45 against Baker Hughes for filing a frivolous appeal. *See* Tex.R.App. P. 45. If a court of appeals determines an appeal is frivolous, it may, after notice and a reasonable opportunity for response, award just damages to the prevailing party. *Id.* Granting sanctions is discretionary, and we must exercise that discretion "with prudence, caution, and after careful deliberation." *Rios v. Northwestern Steel & Wire Co.*, 974 S.W.2d 932, 936 (Tex.App.-Houston [14th Dist.] 1998, no pet.). We impose sanctions only under those circumstances we find truly egregious. *Chapman v. Hootman*, 999 S.W.2d 118, 124 (Tex.App.-Houston [14th Dist.] 1999, no pet.).

Hennig contends that sanctions are appropriate because Baker Hughes presented an incomplete record on appeal, raised critical issues for the first time on appeal, and filed an inadequate brief misstating the record and making unsupported accusations. We do not agree that the record in this case evidences such egregious circumstances that sanctions against Baker Hughes are warranted. Accordingly, we decline Hennig's request.

### III. CONCLUSION

In conclusion, the broad arbitration provision in this case encompasses the contract issues submitted to the arbitrators for their decision. The arbitrators did not exceed their powers, nor did the trial court err by inserting the date Baker Hughes filed for arbitration as the prejudgment interest accrual date or in failing to issue findings of fact. We overrule all of Baker Hughes' appellate issues and affirm the trial court's judgment.