In The

## *Court of Appeals*

## *Ninth District of Texas at Beaumont*

_____

## NO. 09-21-00023-CV
_____

### ROBIN ROUSE AND SABRINA ROUSE, Appellants

### V.

### THOMAS CAMPBELL, FOSTER MANAGEMENT, L.L.C., FOSTER TIMBER, LTD., AND CHRISTY W. KOLVA, Appellees

_____

**On Appeal from the 284th District Court**
**Montgomery County, Texas**
**Trial Cause No. 18-12-15871-CV**

_____

### MEMORANDUM OPINION

This is an appeal from a trial court's order confirming an Arbitrator's Award. Appellants Robin Rouse and Sabrina Rouse, individually and as the personal representative of the Estate of Terrill Scatena, filed this appeal to challenge the trial court's Final Judgment, and they argue that the trial court erred by modifying the Arbitrator's Award in a manner not authorized by statute. *See* Tex. Civ. Prac. & Rem. Code Ann. § 171.091. For the reasons explained below, we sustain their issue

1

on appeal and remand the matter to the trial court. We overrule the issues raised by Appellees Thomas Campbell, Foster Management, L.L.C., Foster Timber, Ltd., and Christy Kolva on cross-appeal for lack of jurisdiction.

## Background

The underlying dispute in this case is about the dissolution of a family timber business. We have previously described background facts and certain aspects of the dispute among the parties in other rulings from this Court.[1] In the interest of clarity, we provide an overview of the parties and entities involved, but we limit our discussion to events that are relevant to the issues in this appeal. The underlying facts as to the structure and ownership of the business entities at issue are not disputed.

The individuals in this lawsuit are family members and descendants of Thomas S. Foster, as depicted in the family tree below:

---

[1] *See JPMorgan Chase Bank, N.A. v. Campbell*, No. 09-20-00161-CV, 2021 Tex. App. LEXIS 5001 (Tex. App.—Beaumont June 24, 2021) (mem. op.); *In re Campbell*, No. 09-20-00153-CV, 2020 Tex. App. LEXIS 9637 (Tex. App.—Beaumont Dec. 10, 2020, orig. proceeding). The underlying litigation has also resulted in other appeals to this Court, but we do not include herein the details of those appeals. *See In re Campbell*, No. 09-21-00274-CV, 2021 Tex. App. LEXIS 9488 (Tex. App.—Beaumont Nov. 24, 2021, orig. proceeding); *Rouse v. Campbell*, No. 09-21-00023-CV, 2021 Tex. App. LEXIS 2828 (Tex. App.—Beaumont Apr. 15, 2021, no pet.) (mem. op.); *In re Campbell*, No. 09-20-00153-CV, 2020 Tex. App. LEXIS 4356 (Tex. App.—Beaumont June 10, 2020, orig. proceeding).



Thomas S. Foster began acquiring timberlands in the early 1900s, and when he died, half of his interest in the timberlands passed to his daughter Letitia Foster Campbell. *JPMorgan Chase Bank, N.A. v. Campbell*, No. 09-20-00161-CV, 2021 Tex. App. LEXIS 5001, at *1 (Tex. App.—Beaumont June 24, 2021) (mem. op.). In 1946, Letitia transferred her interest to the Letitia Foster Campbell 46 Trust ("the Trust" a/k/a "LFC46 Trust"), and her son Neil Sr. was named as Trustee.[2] *Id.* at **1-2. After Letitia's children Neil Sr. and Jean died, the beneficial interest in the Trust was allocated to Letitia's grandchildren as follows: 25% for Robin S. Rouse, 25% for Terrill Scatena Peterson, 16.66% for Neil Campbell Jr., 16.66% for Christy Kolva,

---

[2] The parties allege that the Trust assets also include real estate, mineral interest, stocks, and marketable securities in addition to timberlands. *See, e.g.*, *Campbell*, 2021 Tex. App. LEXIS 5001, at *18.

and 16.66% for Thomas Campbell. *Id.* at *2. The Trust was to terminate upon the death of the last to die of Christy, Neil, Robin, and Terrill.[3] *Id.*

In 1995, Neil Sr., Thomas, Christy, Neil, Terrill, and Robin formed Foster Management, L.L.C. ("Foster Management" or "the Company") and Foster Timber, Ltd. ("Foster Timber" or "the Partnership") to avoid the need to appoint a corporate trustee for the Trust following Neil Sr.'s death. *Id.* The Trustee contributed the Trust timber property to Foster Timber. Foster Management is the general partner of Foster Timber and owns 1% of the Partnership, and the Trust is a limited partner and owns 99% of the Partnership. *Id.* at **2-3. Thomas has served as President of Foster Management, Christy served as Treasurer from 1995 until 2018, and Sabrina (Robin's daughter) has served as Treasurer since Christy resigned her position in 2018. Under Foster Timber's Partnership Agreement, Trustee JPMorgan, "shall not take any part in the management or control of the business, or transact any business of the Partnership or have any power to sign for or to bind the Partnership." Foster Management manages the assets and day-to-day operations. After Neil Sr.'s death, the ownership of Foster Management was allocated as follows: 16.66% owned by Neil Jr., 16.66% owned by Thomas, 16.66% owned by Christy, 25% owned by Robin, and 25% owned by Terrill.

---

[3] Thomas Campbell is not a measuring life under the Trust. *Campbell*, 2021 Tex. App. LEXIS 5001, at *2 n.2.

4



Terrill died in October 2020 after the Arbitrator's Award issued, and the parties sent a communication to the trial court stating "all of Terrill's interests in the Foster Entities were simply transferred to []Robin Rouse, an existing Defendant."

Underlying Claims and Arbitration

In December 2018, Plaintiffs Thomas Campbell, Christy Kolva, Foster Management, and Foster Timber filed an Original Petition and Application for Temporary Injunction against Defendants Neil Campbell Jr.,[4] Robin Rouse, Terrill Scatena, and Sabrina Rouse. The petition also named JPMorgan Chase Bank, N.A., Trustee of the Letitia Foster Campbell Trust U/A/D May 14, 1946 ("JPMorgan") as a "[n]ominal [d]efendant [and] necessary party to this litigation and the ADR

---

[4] Although Neil was originally one of the Appellants, he filed a motion to dismiss his appeal, which this Court granted. *See Rouse v. Campbell*, No. 09-21-00023-CV, 2021 Tex. App. LEXIS 5662 (Tex. App.—Beaumont July 15, 2021, no pet.) (mem. op.). We discuss him herein only as necessary.

[p]rocess."[5] The petition alleged that the parties had experienced "more than a decade of dysfunction, dissension, and deadlock in the strategic management and day-to-day operations of Foster Timber and Foster Management." The petition stated that Plaintiffs did not seek relief on the merits but only sought limited declaratory and injunctive relief to preserve the status quo and prevent irreparable harm while the ADR process moved forward.

In January of 2019, Defendants Robin, Terrill, and Sabrina filed a Special Appearance challenging the trial court's personal jurisdiction over them. Robin, Terrill, and Sabrina also filed a Motion to Compel Arbitration, Motion to Stay Pending Arbitration, and Plea to the Jurisdiction. The motion alleged that section 13.1 of the governing Regulations of Foster Management require that any disputes relating to the Regulations must be submitted to mediation before initiating any additional proceedings. On February 11, 2019, Thomas and Christy as Claimants filed a Demand for Arbitration before the American Arbitration Association, and the trial court then ordered the parties to arbitration and stayed proceedings in an order signed April 12, 2019.

---

[5] JPMorgan was originally one of the Appellants, but it filed a motion to dismiss its appeal, which this Court granted. *See Rouse*, 2021 Tex. App. LEXIS 2828. We discuss JPMorgan herein only as necessary.

<u>The Arbitrator's Award</u>

After arbitration, the arbitrator issued a Final Award ("Arbitrator's Award") on March 23, 2020. In the arbitrator's Findings of Fact, the arbitrator found that the family members had experienced disagreement and dissension for years, and this state of affairs had interfered with the ability of Foster Management to operate effectively, and the Foster Management Regulations require that certain major business decisions can only be taken with the approval of members owning 75% of the Company.[6] The arbitrator noted that the family members had discussed ways to divide their business interests voluntarily, but they were unable to agree upon a plan.

The arbitrator stated that he considered whether an involuntary winding up and termination of Foster Management was warranted under section 11.314 of the Texas Business and Organizations Code, which provides that a district court may order the winding up and termination of a limited liability company if:

> (1) the economic purpose of the entity is likely to be unreasonably frustrated;
> (2) another owner has engaged in conduct relating to the entity's business that makes it not reasonably practicable to carry on the business with that owner; or
> (3) it is not reasonably practicable to carry on the entity's business in conformity with its governing documents.

Tex. Bus. Orgs. Code Ann. § 11.314. The arbitrator found the Claimants (Thomas and Christy) had met their burden of proof on all three statutory requirements and

---

[6] Citing Article 6.1(b) of the Regulations of Foster Management, L.L.C.

determined that Foster Management and Foster Timber "shall be dissolved in accordance with Section 11.314 of the Texas Business Organizations Code[.]" The arbitrator further ordered that the two entities "shall be liquidated[]":

> Under both the Foster Management Regulations and the Foster Timber Limited Partnership Agreement, liquidation follows automatically and promptly after an Order of dissolution under Section 11.314 of the Texas Business Organizations Code. Article 12.2 of the Foster Management Regulations states the following: "On dissolution of the Company, a Majority in Interest shall appoint one or more Members as Liquidator." The remainder of Article 12 describes the duty of the Liquidator (or Liquidators) and the steps to follow in completing liquidation of the Company. Similarly, Article 12.1 of the Foster Management Limited Partnership Agreement states the following: "If the Partnership is dissolved under Section . . . 11.l(c) [through an Order of dissolution under Section 11.314 of the Texas Business Organizations Code], . . . the General Partner or, if necessary, a person or committee selected by a Majority in Interest of the Limited Partners ("Liquidator") shall commence to wind up the affairs of the Partnership and to liquidate and sell its properties." In this case, because Foster Management as the General Partner of Foster Timber will have been dissolved, JPMorgan as the Trustee of the LFC46 Trust will presumably select the liquidator to distribute the assets of the Partnership and to wind up its affairs. The remainder of Article 12.1 and Article 12.2 describe the duties and powers of the Liquidator. Importantly for purposes of this arbitration, Article 12.3 gives the Liquidator the discretion to liquidate the assets of the Partnership through either "Cash Distributions" [Article 12.3(a)] or "Distribution in Kind" [Article 12.3(b)]. Finally, the remaining sections of Article 12 describe the procedures for winding up and terminating the Partnership.

The arbitrator declined to determine the form a liquidation of Foster Timber should take and concluded that "a qualified and experienced liquidator, as well as the appropriate judges, would be best equipped to resolve the remaining issues"

concerning liquidation of Foster Timber and Foster Management and the future of the Trust. The arbitrator also stated:

> If, within thirty days following the issuance of this Final Award, a Majority in Interest of the members of Foster Management cannot decide on the appointment of one or more of its members as Liquidator under Article 12.2 of the Foster Management Regulations, the Arbitrator will retain jurisdiction in this arbitration to appoint one or more members as the Liquidator of Foster Management.

Despite declining to determine how liquidation should occur, the arbitrator stated that a plan for dividing the timberland into five equally valued segments that had been developed by the Claimants' expert "deserves careful consideration[.]" After awarding certain costs and fees (which are not the subject of this appeal), the Arbitrator's Award concluded "[a]ll claims or counterclaims not expressly granted herein are denied."

<u>Application to Confirm Arbitrator's Award</u>

The same day that the Arbitrator's Award was signed, Plaintiffs filed an Application to Confirm Arbitrat[or's] Award and Counterclaim for Trust Modification. The Plaintiffs characterized the Arbitrator's Award as "sound, well-reasoned, and effectuates the common-sense solution apparent to everyone who encounters the dysfunctional family business that is the subject of these proceedings." The Plaintiffs stated that there were "no conceivable grounds for vacating, modifying, or correcting" the Arbitrator's Award, and they requested the trial court issue an order confirming the Arbitrator's Award "in all respects."

9

Plaintiffs alleged that since Foster Timber and Foster Management have been dissolved under the Arbitrator's Award, "JPMorgan is preparing to implement a liquidation process that will have disastrous consequences." According to Plaintiffs, "JPMorgan has made clear that it intends to sell the Trust assets and invest the proceeds in marketable securities over which JPMorgan will have complete control." Plaintiffs argued that without an order modifying the Trust, the family faces tax losses "in the tens of millions as a result of JPMorgan's sale of the timberland properties[.]" Plaintiffs further argued that a trust modification was the only way to avoid this outcome because a division of the Trust would allow the family members to manage their own shares of the timberlands instead of a wholesale sell-off by the Trustee. Plaintiffs requested "that the Court modify the Trust Agreement to allow for the division of the existing single Trust into five separate trusts, such that each beneficiary's Share will be segregated into a separate and distinct trust set aside in proportion to such beneficiary's existing Share of the Trust estate." Plaintiffs asked the trial court to issue an order "modifying the [] Trust to achieve family branch autonomy and fair distribution of Trust assets and/or directing JPMorgan, as Trustee, to take actions to effectuate this same result."

Defendants Neil, Terrill, Robin, and Sabrina filed certain objections to confirmation of the award, but their objections did not relate to the issues in this

10

appeal.[7] None of the parties asked the trial court to modify the Arbitrator's Award to provide that JPMorgan shall select the liquidator for Foster Timber.

On May 18, 2020, JPMorgan filed a plea to the jurisdiction as to the Counterclaim for Trust Modification. JPMorgan argued that the Trust owns no land but only a partnership interest in Foster Timber; that during arbitration, no one was asking the arbitrator to modify the Trust; that JPMorgan did not expect that the members of Foster Management would agree to appoint a liquidator and JPMorgan believed it should do so upon confirmation of the Arbitrator's Award; that the Trust was formed in California and has been administered in Illinois; that JPMorgan had filed a petition in an Illinois court seeking instructions that would allow JPMorgan to divide the trust into five subtrusts; and that the trial court could not grant the Trust modification counterclaim because it lacks jurisdiction over all of its beneficiaries and the Trustee.

On May 19, 2020, Neil and Benjamin (Ben) Campbell filed a Plea to the Jurisdiction Regarding Trust Modification. Relevant to the issues in this appeal, Neil and Ben argued that the Trust is not governed by an arbitration clause; that the

---

[7] Neil objected to confirming the Arbitrator's Award based on its award of fees and ruling on indemnity. Terrill, Robin, and Sabrina objected to the Arbitrator's Award based in part on an alleged improper relationship between the arbitrator and Plaintiffs' counsel, which we have already ruled on. *See generally In re Campbell*, 2020 Tex. App. LEXIS 9637. Terrill, Robin, and Sabrina also objected to the Arbitrator's Award to the extent that it made rulings as to Foster Timber because Foster Timber was not a party to the arbitration.

11

proposed Trust modification would pose financial risks and would fundamentally change who controls the Trust assets in a manner that lacks support in the settlor's intent or the 1995 proceedings to amend the Trust; and Illinois has jurisdiction over the Trust that predates the Plaintiffs' Counterclaim. Neil and Ben asked the trial court to decline jurisdiction to modify the Trust.

On May 20, 2020, Defendants Terrill, Robin, and Sabrina filed a Response to Plaintiffs' Application for Order in Support of Arbitration Against JPMorgan Under Tex. Civ. Prac. & Rem. Code § 171.086. Therein, they argued that the Trust was a California trust, it had never been administered in Texas, and it was currently administered in Illinois; that the Trust does not require modification or division to ensure implementation of the Arbitrator's Award; that Article 12 of the Partnership Agreement controls the liquidation process, which permits distribution either in case or in kind; that the trial court's jurisdiction to render judgment on the Arbitrator's Award is a distinctly different matter than its jurisdiction (if any) over the Trust; and that the trial court lacks jurisdiction over the counterclaim to modify the Trust because the Trust does not own land in Texas. Defendants Terrill, Robin, and Sabrina asked the trial court to deny Plaintiffs' Application and Plaintiffs' claim for Trust modification.

<u>The Trial Court's Orders</u>

On June 4, 2020, the trial court signed three orders. In the Order on Defendants' Special Appearance, the trial court sustained Robin, Terrill, and Sabrina's special appearance and ordered:

> . . . all claims raised against Robin S. Rouse, Terrill A. Scatena, and Sabrina Rouse, including those related to modification of the LFC46 Trust BUT NOT INCLUDING ANY OF THE CLAIMS RELATED TO THE ARBITRATION OF MATTERS IN THIS CASE, are dismissed with prejudice for refiling in Texas.

In another order—Order Granting J.P. Morgan Chase's, Neil Campbell's and Ben Campbell's Pleas to the Jurisdiction—the trial court stated:

> . . . The Court finds that it lacks subject matter jurisdiction over the Trust Modification for the reasons presented in the Pleas to the Jurisdiction as well as the fact that the issue of Trust modification was an arbitrable issue, left for the Arbitrator and outside the scope of this Court's authority under Chapter 171 of the Civil Practice and Remedies Code.
>
> IT IS THEREFORE ORDERED that JPMorgan's Plea to the Jurisdiction regarding the "Counterclaim for Trust Modification" is in all things GRANTED. IT IS FURTHER ORDERED that NEIL AND BEN CAMPBELL'S PLEA TO THE JURISDICTION REGARDING TRUST MODIFICATION is in al[l] things GRANTED.
>
> IT IS FURTHER ORDERED that the claim for Trust Modification by Thomas Campbell, Christy Kolva, Isabelle Campbell, and Ashley Gates is hereby DISMISSED WITH PREJUDICE.

In its third order, the trial court found that "as a matter of law J.P. Morgan Chase generally appeared in this Court on January 9, 2019 via a filed general denial, as well as by filing its own Petition for Declaratory Judgment on August 1, 2019." Therefore, the trial court denied JPMorgan's special appearance. In a separate

13

appeal, this Court determined that JPMorgan did not waive personal jurisdiction by filing a declaratory judgment action, that the trial court erred by denying JPMorgan's special appearance, and that the Plaintiffs "failed to meet their burden to establish that the Texas court had personal jurisdiction over JPMorgan with regard to the trust modification counterclaim." *See Campbell*, 2021 Tex. App. LEXIS 5001, at **5-6, **26-27.

On January 7, 2021, the trial court signed an Order Confirming Arbitrat[or's] Award and Setting Attorney's Fees Submission Date. Therein, the trial court stated that "Confirmation of the Arbitrat[or's] Award is nothing but a ministerial act[,]" citing sections 171.087 and 171.092(a) of the Texas Civil Practice and Remedies Code and *Temple v. Riverland Co.*, 228 S.W. 605, 607 (Tex. App.—Amarillo 1921, no writ) ("The court, in entering the award, performs no judicial function in pronouncing judgment or in determining the rights of the parties. The entry is purely a ministerial act which the law commands as a duty."). The order stated "[t]his Order incorporates all provisions of the Arbitrat[or's] Award for all purposes."

The parties complained about a specific portion of the January 7th Order confirming the arbitration, wherein the trial court states:

> Based on the Arbitrat[or's] Award, it is further ORDERED, ADJUDGED, and DECREED that J.P. Morgan Chase as Trustee of the LFC46 Trust shall select a Liquidator pursuant to Article 12 of the Foster Management Regulations who shall liquidate Foster Management, LLC pursuant to the provisions of Article 12 of the Foster Management Regulations.

14

Defendants Robin and Sabrina filed a Motion to Set Aside and Alternatively Motion to Correct Order Confirming Arbitrat[or's] Award and Informal Bill raising numerous challenges to the trial court's Order. In their motion, Robin and Sabrina argued that the portion of the Order excerpted above "is not contained in the Arbitrat[or's] Award and warrants correction[.]" They further argued that the Arbitrator's Award makes clear that the liquidator shall be a member of Foster Management and JPMorgan is not a member. According to Robin and Sabrina, the Arbitrator's Award correctly stated that (1) the General Partner of Foster Timber (that is, Foster Management) has the right to name the liquidator of Foster Timber and (2) the limited partners (that is, JPMorgan as Trustee) will have the authority to appoint the liquidator *only* if the General Partner does not do so.

JPMorgan also filed a Motion Nunc Pro Tunc/To Clarify, stating that the portion of the Order requiring it to select a liquidator "was entered in error[]" because the Arbitrator's Award does not require JPMorgan to select a liquidator for either Foster Management or Foster Timber and the arbitrator only "presumed" that JPMorgan—as the limited partner of Foster Timber—would appoint a liquidator for Foster Timber. JPMorgan explained that the Arbitrator's Award referred to Article 12.2 of the Foster Management Regulations, which states in relevant part, "On dissolution of the Company, a Majority in Interest shall appoint one or more Members as Liquidator."

15

On February 17, 2021, Plaintiffs filed Notice to the Court Regarding Further Developments Related to Liquidation & Plaintiffs' Further Opposition to Matters Set for Submission on February 19th. Attached as an exhibit thereto is a document dated January 26, 2021 and titled "Written Consent of the Members of Foster Management, LLC[.]" This document states, in relevant part, that the Article 12.2 of the Regulations of Foster Management provides that "On dissolution of the Company, a Majority in Interest shall appoint one or more Members as Liquidator." The document further states:

> Pursuant to Section 7.6(a) of the Regulations of Foster Management, LLC[8] Robin Rouse, Sabrina Rouse, Benjamin Campbell and Neil F. Campbell, Jr. as a Majority in Interest of Foster Management, LLC take the following Action by Written Consent:
> Should the Arbitrat[or's] Award and Confirmation Order become an enforceable final judgment, Sabrina Rouse, a Member, is

---

[8] Section 7.6(a) of the Regulations of Foster Management provides:

Any action required or permitted to be taken at any annual or special meeting of Members requiring the vote of a Required Interest, a Majority in Interest, or some lesser percentage of the Sharing Ratios may be taken without a meeting, without prior notice, and without a vote, if a consent or consents in writing, setting forth the action so taken, shall be signed by a Required Interest, a Majority in Interest, or such lesser percentage of the Sharing Ratios as may be required to act under the Act, the Articles, or these Regulations. Every written consent shall bear the date of signature of each Member who signs the consent. A telegram, telex, cablegram or similar transmission by a Member, or a photographic, photostatic, facsimile or similar reproduction of a writing signed by a Member, shall be regarded as signed by the Member for purposes of this Section. Prompt notice of the taking of any action by Members without a meeting by less than unanimous written consent shall be given to those Members who did not consent in writing to the action.

16

appointed as the sole Liquidator of Foster Management, LLC as called for by Article 12.2 of the Regulations of Foster Management. As Liquidator, Sabrina Rouse shall continue to operate the Company properties with all the power and authorities of the Members.

On February 20, 2021, the trial court signed an Order on Motion *Nunc Pro Tunc*. The court noted the following:

- The Arbitrat[or's] Award actually quotes from Art. 12.1 of the Forest [sic] Timber Limited Partnership Agreement, but mistakenly attributes the quote to the "Foster Management Limited Partnership Agreement":

  "If the Partnership is dissolved under Section…[11.1](c) [through an Order of dissolution under Section 11.31-i of the Texas Business Organizations Code] . . . the General Partner or, if necessary, a person or committee selected by a Majority in Interest of the Limited Partners ('Liquidator') shall commence to wind up the affairs of the Partnership and to liquidate and sell its properties. In this case, because Foster Management as the General Partner of Foster Timber will have been dissolved, JPMorgan as the Trustee of the LFC46 Trust will presumably select the liquidator to distribute the assets of the Partnership and to wind up its affairs."

- The error by the Arbitrator in the attribution of his quote led this Court to its January 7, 2021 Order saying JPMorgan is required to select a liquidator for Foster Management instead of saying it is required to select a liquidator for Foster Timber.

- It is entirely appropriate for JPMorgan to select the liquidator under the quoted provision because it held a 99% limited partnership interest in Foster Timber as the trustee of the LFC46 Trust. Foster Management had held the other 1% interest.

- Although the Arbitrator did not order JPMorgan to select a liquidator (*see* paragraph 12 of the Conclusions of Law in the Arbitrat[or's] Award), given that the Arbitrator both dissolved and liquidated Foster Timber and Foster Management, but did not order the members to take any action toward liquidating Foster

17

Management (instead retaining jurisdiction to do so if the members failed to take appropriate action (*see* paragraphs 12 and 14 of the Conclusions of Law), the Arbitrator's intent in this regard is clear, as is the mistaken reference to Foster Management when intending Foster Timber.

The trial court then ordered that its Order of January 7, 2021 be modified by the Final Judgment to say that "JPMorgan is ordered to determine a liquidator for Foster Timber instead of Foster Management."

On February 20, 2021, the trial court signed a Final Judgment, entirely replacing its January 7, 2021 Order. The trial court stated that, because the Trust modification claim was dismissed for lack of subject matter jurisdiction, the only pending matter was confirmation of the Arbitrator's Award, and "Confirmation of the Arbitrat[or's] Award is nothing but a ministerial act." The trial court ordered that the Arbitrator's Award is confirmed, ordered dissolution of both Foster Timber and Foster Management, and stated, in relevant part:

> Based on the Arbitrat[or's] Award, it is further ORDERED, ADJUDGED and DECREED that J.P. Morgan Chase as Trustee of the LFC46 Trust shall select a Liquidator pursuant to Article 12 of the Foster Timber Regulations who shall liquidate Foster Timber, LLC pursuant to the provisions of Article 12 of the Foster Management Regulations.

On April 14, 2021, JPMorgan appointed the Stapleton Group as liquidator of Foster Timber.[9]

---

[9] Our record does not indicate that any party filed a supersedeas bond.

Issues

Appellants argue that the trial court erred by modifying the Arbitrator's Award to order that JPMorgan select a liquidator for Foster Management. According to Appellants, the trial court erred in modifying the Arbitrator's Award in a way that no party had requested, that was contrary to the terms of the partnership Agreement, that ignored the appointment of the liquidator who would need to be selected by a Majority in Interest of the Members of Foster Management, and the trial court's order was without reason and not authorized by statute. Appellants also argue that the trial court should not have taken the dissolution process out of the family's hands. Appellants ask this Court to reverse the portion of the trial court's final judgment that orders JPMorgan to select a liquidator for Foster Timber and to modify the final judgment to conform to the arbitrator's award. Appellants also ask this Court to

> . . . acknowledge that, pursuant to Section 12.2 of the Regulations, and Section 12.1(a) of the Partnership Agreement, Sabrina Rouse, as the duly appointed liquidator of Foster Management, acts with the power and authority of the General Partner in connection with the dissolution of Foster Timber, and that she is therefore charged with the duty and authority to wind up the affairs of Foster Timber and to liquidate its assets.

Appellants do not appeal the Arbitrator's Award or the arbitrator's holding that the company and partnership be dissolved and liquidated.

Appellees argue this Court should decline the invitation to appoint Sabrina as Foster Timber's liquidator. That said, in two issues in their cross-appeal, Appellees

19

also contend that the trial court erred in denying JPMorgan and Neil Jr.'s pleas to the jurisdiction and in ruling that it lacked jurisdiction to modify a Texas trust and divide Texas real property. Appellees also argue that the trial court erred in granting Robin's, Terrill's, and Sabrina's special appearance and finding that it lacked personal jurisdiction over them.

## Standard of Review

We review de novo a trial court's order confirming, modifying, or vacating an arbitration award. *See Conn Appliances, Inc. v. Puente*, No. 09-18-00326-CV, 2020 Tex. App. LEXIS 6410, at *7 (Tex. App.—Beaumont Aug. 13, 2020, no pet.) (mem. op.); *Constr. Fin. Servs. v. Douzart*, No. 09-16-00035-CV, 2018 Tex. App. LEXIS 1551, at *6 (Tex. App.—Beaumont Feb. 28, 2018, pet. denied) (mem. op.) (citing *D.R. Horton-Tex., Ltd. v. Bernhard*, 423 S.W.3d 532, 534 (Tex. App.—Houston [14th Dist.] 2014, pet. denied)). Texas law favors arbitration, and under Texas law, the review of arbitration awards is "extraordinarily narrow." *Hoskins v. Hoskins*, 497 S.W.3d 490, 494 (Tex. 2016) (citation omitted); *Conn Appliances, Inc.*, 2020 Tex. App. LEXIS 6410, at *7. An arbitration award has the same effect as a judgment of a court of last resort, and we indulge all reasonable presumptions in favor of the award and none against it. *See Conn Appliances, Inc.*, 2020 Tex. App. LEXIS 6410, at *7; *see also CVN Grp., Inc. v. Delgado*, 95 S.W.3d 234, 238 (Tex. 2002); *Midani v. Smith*, No. 09-18-00009-CV, 2018 Tex. App. LEXIS 8954, at *10 (Tex. App.—

Beaumont Nov. 1, 2018, pet. denied) (mem. op.). An appellate court gives great deference to an arbitrator's award, and such awards are presumed to be valid. *See Delgado*, 95 S.W.3d at 238. Generally, even where the arbitrator has made a mistake of law or fact, courts may not vacate or modify the award. *See Midani*, 2018 Tex. App. LEXIS 8954, at *10. We consider the entire record in our review. *See Conn Appliances, Inc.*, 2020 Tex. App. LEXIS 6410, at *7.

"Unless grounds are offered for vacating, modifying, or correcting an award under Section 171.088 or 171.091 [of the Texas Arbitration Act], the court, on application of a party, *shall* confirm the award." Tex. Civ. Prac. & Rem. Code Ann. § 171.087 (emphasis added). A trial court may modify or correct an arbitration award only if:

> (1) the award contains:
>     (A) an evident miscalculation of numbers; or
>     (B) an evident mistake in the description of a person, thing, or property referred to in the award;
> (2) the arbitrators have made an award with respect to a matter not submitted to them and the award may be corrected without affecting the merits of the decision made with respect to the issues that were submitted; or
> (3) the form of the award is imperfect in a manner not affecting the merits of the controversy.

*Id.* § 171.091.

In the absence of a clear agreement to limit the arbitrator's authority and expand the scope of judicial review, on appeal this Court may not exercise expanded judicial review. *See Midani*, 2018 Tex. App. LEXIS 8954, at *12 (citing *Forest Oil*

21

*Corp. v. El Rucio Land & Cattle Co.*, 518 S.W.3d 422, 432 (Tex. 2017)). The trial court that is asked to confirm an arbitration award may not substitute its judgment for the arbitrator's nor speculate about the arbitrator's intent. *See Garza v. Phelps Dodge Ref. Corp.*, 262 S.W.3d 514, 519 (Tex. App.—El Paso 2008, no pet.); *Baker Hughes Oilfield Operations, Inc. v. Hennig Prod. Co.*, 164 S.W.3d 438, 447 (Tex. App.—Houston [14th Dist.] 2005, no pet.) (citing *Riha v. Smulcer*, 843 S.W.2d 289, 293 (Tex. App.—Houston [14th Dist.] 1992, writ denied)).

The Arbitrator's Award ordered that Foster Management and Foster Timber "shall be dissolved" and "shall be liquidated." Referencing Article 12.2 of the Foster Management Regulations, the arbitrator wrote that upon dissolution of the company, "'a Majority in Interest shall appoint one or more Members as Liquidator.'" The arbitrator then stated, "because Foster Management as the General Partner of Foster Timber will have been dissolved, JPMorgan as the Trustee of the [] Trust will presumably select the liquidator to distribute the assets of the Partnership and to wind up its affairs." The arbitrator acknowledged that Article 12.3 gives the Liquidator discretion whether to liquidate the assets of the Partnership in cash or in kind, and the arbitrator expressly declined to determine the form that liquidation should take. Rather, the arbitrator concluded that "a qualified and experienced liquidator, as well as the appropriate judges, would be best equipped to resolve the

22

remaining issues concerning the liquidation of the Foster Timber Partnership and the future of the [] Trust."

While the arbitrator expressly ordered the dissolution and liquidation of Foster Management and Foster Timber, the arbitrator did not order that JPMorgan should select a liquidator. Instead, the arbitrator wrote that JPMorgan "will *presumably* select the liquidator[.]" (emphasis added) Merriam-Webster defines "presumably" to mean "by reasonable assumption[.]" *See Presumably*, Merriam-Webster, https://www.merriam-webster.com/dictionary/presumably (last visited Nov. 15, 2022). Black's Law Dictionary defines "presume" to mean "[t]o assume beforehand; to suppose to be true in the absence of proof." *See Presume*, Black's Law Dictionary (9th ed. 2009). By contrast, Black's defines "order" as "[a] command, direction, or instruction." *See Order*, Black's Law Dictionary (9th ed. 2009). Nothing in the text of the Arbitrator's Award orders, commands, directs, or instructs JPMorgan to select the liquidator.

The trial court knew this, as acknowledged in the Order on Motion *Nunc Pro Tunc* (emphasis added):

> Although the *Arbitrator did not order JPMorgan to select a liquidator* (*see* paragraph 12 of the Conclusions of Law in the Arbitrat[or's] Award), given that the Arbitrator both dissolved and liquidated Foster Timber and Foster Management, but did not order the members to take any action toward liquidating Foster Management (instead retaining jurisdiction to do so if the members failed to take appropriate action (*see* paragraphs 12 and 14 of the Conclusions of Law), *the Arbitrator's*

23

*intent in this regard is clear*, as is the mistaken reference to Foster Management when intending Foster Timber.

The trial court erroneously modified the Arbitrator's Award to add an order that JPMorgan select the liquidator and in doing so improperly engaged in speculation about what the arbitrator "intended" when the arbitrator wrote that JPMorgan "will *presumably* select the liquidator[.]" This exceeded the scope of the statutory criteria enumerated in section 171.091. *See* Tex. Civ. Prac. & Rem. Code Ann. § 171.091.[10] No party filed an application to modify or correct the Arbitrator's Award. *See generally id.* (explaining that a party must file an application to modify or correct an award.). A trial court reviewing the award errs by substituting its judgment for the arbitrator's or when it speculates about the arbitrator's intent. *See Garza*, 262 S.W.3d at 519; *Baker Hughes Oilfield Operations, Inc.*, 164 S.W.3d at 447 (citing *Riha*, 843 S.W.2d at 293). This Court has already determined that the trial court lacked personal jurisdiction over JPMorgan. *See Campbell*, 2021 Tex. App. LEXIS 5001, at **26-27. Therefore, we conclude that the trial court erred by including in its Final Judgment language ordering that JPMorgan "shall select a Liquidator[,]" and this paragraph should be stricken from the Final Judgment. *See* Tex. Civ. Prac. & Rem. Code Ann. § 171.087.

---

[10] By contrast, modifying the Arbitrator's Award to change the reference to Foster Management to Foster Timber is allowable as an "evident mistake in the description of a person, thing, or property referred to in the award[.]" *See* Tex. Civ. Prac. & Rem. Code Ann. § 171.091(a)(1)(B).

24

Appellants have also asked that this Court to acknowledge that Sabrina is the "duly appointed liquidator of Foster Management[.]" We decline to do so because we are limited to reviewing a trial court's rulings or judgments, and our record does not indicate that the trial court made any ruling on this issue. *See* Tex. R. App. P. 33.1 (an issue on appeal must be preserved in the trial court by a timely objection and obtaining a ruling thereon).

## Cross-Appeal

"A court must have both subject matter jurisdiction over a case and personal jurisdiction over the parties to issue a binding judgment." *Luciano v. SprayFoamPolymers.com, LLC*, 625 S.W.3d 1, 7-8 (Tex. 2021) (citing *Spir Star AG v. Kimich*, 310 S.W.3d 868, 871 (Tex. 2010)). In all proceedings concerning trusts, the trustee is a necessary party to the action. *See Antolik v. Antolik*, 625 S.W.3d 530, 538 (Tex. App.—Texarkana 2021, pet. denied) (citing *Tomlinson v. Khoury*, 624 S.W.3d 601, 608 (Tex. App.—Houston [1st Dist.] Oct. 27, 2020, pet. denied)); *Ray Malooly Trust v. Juhl*, 186 S.W.3d 568, 570 (Tex. 2006). That said, this Court has already ruled that the trial court lacked personal jurisdiction over JPMorgan as to the counterclaim seeking a modification of the Trust. *See Campbell*, 2021 Tex. App. LEXIS 5001, at **26-27. Therefore, Appellees' Counterclaim for Trust Modification fails for lack of jurisdiction, and we overrule Appellees' issues on cross-appeal.

25

Appellees previously presented an argument that the trial court had *in rem* jurisdiction over the Trust in *JPMorgan Chase Bank, N.A. v. Campbell*, 2021 Tex. App. LEXIS 5001.[11] Appellees made the same argument in this appeal, wherein they argued "[b]ecause the trial court had *in rem* jurisdiction over the Trust assets, it did not need to have *in personam* jurisdiction over any Trust party[]" and "[t]he trial court's personal-jurisdiction rulings are simply immaterial given its *in rem* jurisdiction." In *JPMorgan Chase Bank, N.A. v. Campbell*, this Court found the trial court lacked personal jurisdiction over JPMorgan and that personal jurisdiction over the trustee *was* material to the claim for trust modification, thereby implicitly overruling Appellees' argument about *in rem* jurisdiction over the Trust assets. *Id.* at **26-27.[12] We follow our own precedent and reject the Appellees' *in rem* argument.

Appellees also argue that the trial court was wrong when it ruled that it lacked personal jurisdiction over Robin, Terrill, and Sabrina. Robin, Terrill, and Sabrina participated in the arbitration. Neither Robin, Terrill, or Sabrina challenges the

---

[11] In *JPMorgan Chase Bank, N.A. v. Campbell*, the appellant was JPMorgan, and the appellees were Thomas Campbell, Christy Kolva, Foster Management, Foster Timber, Neil Campbell, Robin Rouse, Terrill Scatena, and Sabrina Rouse. *See generally* 2021 Tex. App. LEXIS 5001.

[12] Appellees in *JPMorgan Chase Bank, N.A. v. Campbell* did not address *in rem* jurisdiction in their motion for rehearing filed in that appeal, and they did not file a petition for review with the Supreme Court of Texas in that matter. The mandate has issued in that case.

Arbitrator's Award, and all parties agree that the Arbitrator's Award is binding on them. Therefore, we need not address the issue of whether the trial court erred in its ruling that it lacked personal jurisdiction over Robin, Terrill, and Sabrina because that issue is moot. *See Allstate Ins. Co. v. Hallman*, 159 S.W.3d 640, 642 (Tex. 2005) ("A case becomes moot if a controversy ceases to exist or the parties lack a legally cognizable interest in the outcome."). We overrule Appellees' issues on cross-appeal.

## Conclusion

Having sustained Appellants' issue and having overruled Appellees' issues on cross-appeal, we affirm the Final Judgment in part, and we reverse that portion of the Final Judgment that reads:

> Based on the Arbitrat[or's] Award, it is further ORDERED, ADJUDGED and DECREED that J.P. Morgan Chase as Trustee of the LFC46 Trust shall select a Liquidator pursuant to Article 12 of the Foster Timber Regulations who shall liquidate Foster Timber, LLC pursuant to the provisions of Article 12 of the Foster Management Regulations.

We remand to the trial court with instructions to modify the Final Judgment to delete the paragraph excerpted above in accordance with this opinion. *See* Tex. R. App. P. 43.2(a), (d).

AFFIRMED IN PART; REVERSED AND REMANDED IN PART.

_____
LEANNE JOHNSON
Justice

Submitted on March 24, 2022
Opinion Delivered December 22, 2022

Before Golemon, C.J., Horton and Johnson, JJ.